UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARIO BOWLES,<br><br>    Plaintiff,<br><br>v.<br><br>TENNESSEE DEPARTMENT OF CORRECTION et al.,<br><br>    Defendants. | Case No. 3:22-cv-00032<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

More than two years have passed since the Court screened pro se and *in forma pauperis* Plaintiff Mario Bowles's amended pleadings in this action and found that Bowles had stated colorable Eighth Amendment failure-to-protect claims against Defendants Nakynia Jackson and Jeree Harris under 42 U.S.C. § 1983. (Doc. Nos. 36, 37.) In that time, the Court has repeatedly explained the requirements for Bowles to effect service of process on the defendants and issued orders to help Bowles determine Harris's first name and identify addresses where Jackson and Harris could be served. (Doc. Nos. 37, 48, 85, 127, 173, 183, 194, 199.) The United States Marshals Service has also tried to determine service addresses for Jackson and Harris. Despite these efforts, and after numerous attempts, the Marshals Service has been unable to serve Jackson or Harris with process in this action.

For the reasons that follow, the Magistrate Judge will recommend that the Court dismiss Bowles's claims against Jackson and Harris without prejudice under Federal Rule of Civil Procedure 4(m) for Bowles's failure to effect service of process.

I.      **Relevant Background**

The Court summarized the history of service attempts on Jackson and Harris in an order to show cause:

> Pro se Plaintiff Mario Bowles's claims in this civil rights action brought under 42 U.S.C. § 1983 arise out of his incarceration at two Tennessee Department of Correction (TDOC) facilities operated by Defendant CoreCivic, Inc. (CoreCivic) Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, and Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. (Doc. Nos. 13, 16.) "Because Bowles appears *in forma pauperis* in this action (Doc. No. 37), the Court has directed the U.S. Marshals Service to effect service of process on the defendants in accordance with Federal Rule of Civil Procedure 4(c)(3)." (Doc. No. 194, PageID# 1071 (citing Fed. R. Civ. P. 4(c)(3)).) This Order to Show cause addresses Bowles's and the Marshals Service's efforts to effect service of process on Defendants Nakynia Jackson and Jeree Harris, who used to work for CoreCivic and who are the only remaining defendants in this action who have not yet been served.
>
> At Bowles's request, the Clerk of Court issued summonses for Jackson and Harris to be served at TTCC and WCF, respectively. (Doc. No. 47.) But, at the time he requested these summonses, Bowles had not yet discovered Harris's and Jackson's first names. The Marshals Service returned both summonses unexecuted. (Doc. Nos. 62, 71.) For Jackson's summons, the Marshals Service noted that it was unable to serve the summons because Jackson was "no longer employed" at TTCC and there was "no forwarding info" available. (Doc. No. 71, PageID# 447.) For Harris's summons, the Marshals Service noted that there were multiple people with the last name Harris working at WCF when it attempted service and that it was unable to determine which employee was the Harris named as a defendant in Bowles's amended complaint. (Doc. No. 62.)
>
> In compliance with the Court's orders (Doc. Nos. 127, 173), counsel for the defendants who have appeared in this action filed Jackson's last known home address under seal (Doc. No. 128). The Clerk of Court issued a sealed summons to Jackson a[t] that address (Doc. No. 174) and forwarded the summons to the Marshals Service to be served on Jackson. "[T]he Marshals Service filed a process receipt and return stating that its attempts to serve Jackson at the provided address were unsuccessful because there is 'no residence with that number.'" (Doc. No. 194, PageID# 1071 (quoting Doc. No. 191, PageID# 1053).) However, the Marshals Service also stated that it had identified another possible residential address for Jackson and attempted in person service at that address, "but no one was home." (*Id.* at PageID# 1071–72 (quoting Doc. No. 191, PageID# 1053).) "Out of an abundance of caution, and to exhaust all reasonable efforts to effect service of process on Jackson, the Court [ ] direct[ed] the Marshals Service to attempt to serve Jackson one last time at the second address that the Marshals Service [had] identified" (*id.* at PageID# 1072), with a sealed summons that the Clerk of Court

reissued (Doc. No. 196). The Marshals Service returned the summons unexecuted, indicating that it tried to serve Jackson in person at the second address four more times but was unsuccessful. (Doc. Nos. 202, 203.)

In the interim, the Court issued several orders related to helping Bowles determine Harris's first name and identity (Doc. Nos. 85, 127), and Bowles eventually identified Jeree Harris as the defendant named in his amended complaint (Doc. No. 138). Counsel for the defendants who have appeared in this action filed a sealed notice stating that Harris no longer worked for CoreCivic and providing her last known address. (Doc. No. 179.) At the Court's direction (Doc. No. 183), the Clerk of Court issued a sealed summons to Harris at her last known address and provided it to the Marshals Service for service (Doc. No. 184). The Marshals Service returned the sealed summons unexecuted, stating that it was unable to locate Harris at the last known address but had "found a new possible address" that it provided to the Court under seal. (Doc. No. 198, PageID# 1081.) At the Court's direction (Doc. No. 199), the Clerk of Court issued a sealed summons to Harris at the new address and provided it to the Marshals Service for service on Harris (Doc. No. 200). The Marshals Service returned the summons unexecuted, stating that it tried to serve Harris at the address provided by mail and in person but was unsuccessful. (Doc. Nos. 226, 227.)

(Doc. No. 229, PageID# 1397–99 (most alterations in original).)

In the same show-cause order, the Court explained that, "[e]ven though the Marshals Service is designated to serve Jackson and Harris with process on Bowles's behalf, it remains Bowles's responsibility to provide correct service addresses for these defendants." (*Id.* at PageID# 1400 (collecting authority).) The Court further explained that, under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." (*Id.* at PageID# 1399 (alteration in original) (quoting Fed. R. Civ. P. 4(m).) The Court therefore ordered Bowles to show cause "by August 19, 2024, why the Magistrate Judge should not recommend that the Court dismiss his claims against Jackson and Harris under Rule 4(m) for failure to effect timely service of process." (*Id.* at PageID# 1401.)

On August 16, 2024, the Court received Bowles's response to the show-cause order. (Doc. No. 232.) Bowles repeats his allegations that Harris and Jackson violated his Eighth Amendment rights while he was incarcerated at TTCC and WCF, and he argues that "judgment should be against the defendants and in favor of the plaintiff." (*Id.* at PageID# 1413, ¶ A.(10).) Bowles states that "Harris has been fully aware of the civil law suit and has avoided being serve[d]" (*id.* at PageID# 1414, ¶ B.(6)), and "that he's made his 'bes[t]' effort in producing the defendants' name[s] and address[es] and so has the Court" (*id.* at PageID# 1415, ¶ C.(3)). He therefore argues that "he has shown just cause" not to dismiss his claims against Harris and Jackson. (*Id.* at PageID# 1416.)

**II.      Legal Standard**

"[T]he requirement of proper service of process 'is not some mindless technicality[,]'" *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)), nor is it "meant to be a game or obstacle course for plaintiffs[,]" *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 455 (E.D. Pa. 2015). Rather, it goes to the very heart of a court's ability to hear a case. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (explaining that "[s]ervice is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's assertion of jurisdiction over the lawsuit'" (citation omitted)). Where personal jurisdiction is not properly established, a court cannot exercise its authority consistent with due process of law. *See Friedman*, 929 F.2d at 1156–57.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action

without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996). In light of this plain language, it is well established that Rule 4(m) empowers a court to dismiss complaints without prejudice "upon the court's own initiative with notice to the plaintiff." *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1174 (9th Cir. 2002); *see also Friedman*, 929 F.2d at 1155 n.4 (noting that "the issue of ineffective service of process may be raised sua sponte").

The Sixth Circuit has directed district courts to consider seven factors in "deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:"

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
>
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569.

### III. Analysis

When a plaintiff proceeds *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." 28 U.S.C. § 1915(d). Rule 4(c) "dovetails" with § 1915, *Byrd*, 94 F.3d at 219, by providing that "[t]he court must" "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court" "if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . ." Fed. R. Civ. P. 4(c)(3).

> Together, Rule 4(c)[(3)] and 28 U.S.C. § 1915([d]) stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Byrd*, 94 F.3d at 219.

That does not mean, however, that an incarcerated pro se plaintiff proceeding *in forma pauperis* automatically shows good cause for extending the Rule 4(m) deadline when the Marshals Service has been unable to effect service of process on a defendant. Courts in this circuit consider the *in forma pauperis* plaintiff's conduct and the totality of the circumstances in determining whether good cause exists to extend the Rule 4(m) deadline. For example, in *Abel v. Harp*, the Sixth Circuit considered the fact that the plaintiff diligently attempted to contact the Marshals Service "when he knew there was a problem with service on the defendants" and also considered the fact that "[t]he Marshals Service [incorrectly] advised [the plaintiff] that it had served all of the defendants" before holding that good cause existed to extend the Rule 4(m) deadline. 122 F. App'x 248, 252 (6th Cir. 2005). By contrast, in *VanDiver v. Martin*, the court found that a pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend the Rule 4(m) deadline where the plaintiff "remained silent after being put on notice that [ ] Defendants had not been

served" at the address he provided because the defendants "no longer worked for the Michigan Department of Corrections." 304 F. Supp. 2d 934, 941, 942 (E.D. Mich. 2004); *see also Freeman v. Collins*, Civ. Action No. 2:08-cv-00071, 2011 WL 4914873, at *5 (S.D. Ohio Aug. 15, 2011) (finding that pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend Rule 4(m) deadline where he "took no action to cure the lack of service for a significant period . . ."). Similarly, in *Staub v. Nietzel*, the Sixth Circuit found that good cause did not exist to extend the Rule 4(m) deadline despite the "administrative snafu" that the Clerk of Court did not issue a summons for the unserved defendant because the plaintiff "was on notice" that the defendant remained unserved, failed to inquire about the status of service or provide additional information for service to the court, and "fail[ed] to provide any reasonable explanation for sitting idly by for six years[.]" Case No. 22-5384, 2023 WL 3059081, at *8–9 (6th Cir. Apr. 24, 2023). The court there found *VanDiver* analogous and distinguished *Byrd* on the basis that the plaintiff "receive[d] notice that [the defendant] remained unserved" and failed to act for years. *Id.* at *9.

Here, despite their numerous attempts, the Marshals Service has been unable to serve Jackson or Harris at the service addresses that Bowles provided, the last known addresses that CoreCivic provided, or the addresses that the Marshals Service discovered through its own investigation. (Doc. Nos. 62, 71, 191, 197, 198, 202, 203, 226, 227.) Nearly nine months have passed since Bowles has been on notice that the Marshals Service diligently but unsuccessfully attempted to effect service of process on Jackson (Doc. No. 203), and more than six months have passed since Bowles has been on notice that the Marshals Service diligently but unsuccessfully attempted to effect service of process on Harris (Doc. No. 227). The docket shows that, in that time, Bowles has actively participated in this litigation, but has not raised the issue of service on Harris and Jackson except in response to the Court's show-cause order. Although Bowles asserts

in his show-cause response that Harris is evading service (Doc. No. 232), Bowles has not identified any factual support for this assertion. Under the totality of the circumstances, Bowles has not shown that good cause exists to further extend the service deadline. *See Staub*, 2023 WL 3059081, at *8–9; *cf. Shrum v. Tilley*, Case No. 3:22-cv-00669, 2024 WL 3533325, at *8 (M.D. Tenn. June 14, 2024) (finding that incarcerated pro se and *in forma pauperis* plaintiff "ha[d] not shown that good cause exist[ed] to further extend the service deadline" where "[m]ore than a year had passed since [plaintiff] ha[d] been on notice that" defendant was not served and plai8ntiff "ha[d] not raised the issue of service"), *report and recommendation adopted*, 2024 WL 3532241 (M.D. Tenn. July 24, 2024).

The inquiry does not end here. The Court also must consider the seven relevant factors that the Sixth Circuit articulated in *Oakland Physicians Medical Center, LLC*, 44 F.4th at 568–69, to determine whether a further discretionary extension of the service deadline is warranted. The second and fourth factors—prejudice to the defendants and prejudice to the plaintiff—weigh in favor of granting Bowles a discretionary extension. There is no indication that Harris and Jackson would be unduly prejudiced by a further extension of the deadline. *See id.* at 571 (noting that "examples of prejudice" include "'a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events'" (quoting *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012))). The events underlying Bowles's claims against Harris and Jackson are relatively recent, as his amended complaint alleges that the acts in question took place in 2021 and 2022. (Doc. No. 16.)

The Court's refusal to further extend the service deadline may cause substantial prejudice to Bowles because his claims against Harris and Jackson would likely be time-barred if he re-asserted them in a new action. Claims brought under § 1983 are subject to "the state statute of

limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104); *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (same). However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013). Because more than a year has passed since Harris's and Jackson's challenged actions occurred, it is likely that Bowles's claims would be time-barred if he reasserted them in a new action. However, "the running of the statute of limitations does not require a court to grant a discretionary extension[.]" *Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 570 (collecting cases).

The fifth and sixth factors—whether the plaintiff made any good faith efforts to effect service of process or was diligent in correcting any deficiencies and whether the plaintiff is a pro se litigant deserving of additional latitude to correct service defects—are effectively neutral in this analysis. While Bowles initially made good faith efforts to return completed service packets for Harris and Jackson and to provide former work addresses for these defendants, he has not acted diligently to correctly identify current service addresses for Harris and Jackson. And there is no indication that additional time would lead to the discovery of Harris's and Jackson's current addresses.

The first, third, and seventh factors weigh against an extension. A further extension would be well beyond the 90-day time period for service under Rule 4(m), as more than 750 days have passed since the Court screened Bowles's amended complaint and found that he had stated colorable Eighth Amendment failure-to-protect claims against Harris and Jackson. Despite

Bowles's unsupported assertion to the contrary, there is no factual basis to support a finding that Harris and Jackson have actual notice of this action. And there do not appear to be any unique equitable factors weighing in favor of an extension.

Considering the seven relevant factors as a whole, the Court finds that dismissal of Bowles's claims against Harris and Jackson without prejudice under Rule 4(m) is appropriate.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court DISMISS WITHOUT PREJUDICE Bowles's claims against Harris and Jackson under Rule 4(m) for failure to effect service of process.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 10th day of February, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge