UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARIO BOWLES,

      Plaintiff,

v.

TENNESSEE DEPARTMENT OF
CORRECTION et al.,

      Defendants.

Case No. 3:22-cv-00032

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Alistair E. Newbern

To:    The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Pro se and *in forma pauperis* Plaintiff Mario Bowles filed this civil rights action under 42 U.S.C. § 1983 to address issues arising from his incarceration at two Tennessee Department of Correction (TDOC) facilities: Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, and Whiteville Correctional Facility (WCFA) in Whiteville, Tennessee. (Doc. Nos. 13, 16.) Defendant CoreCivic, Inc., a private for-profit corporation, operates both facilities pursuant to contracts with TDOC. (*See* Doc. No. 36, PageID# 274 & n.3 (taking judicial notice that CoreCivic is "the private entity contracted to manage both TTCC and WCFA").) Bowles asserts claims arising under the First and Eighth Amendments to the United States Constitution related to the defendants' alleged retaliation against him, use of force against him, failure to protect him, and deliberate indifference to his serious medical needs. (Doc. Nos. 13, 16.) Defendants CoreCivic, Captain Samuel Beaver, Lieutenant Emond Hill, Captain Victor Huddleston, Case Manager Carolyn Matthews, Captain Kyla Mitchell, Officer Andrea Moore, Lieutenant Craig Murray, Officer Marlon Rowe, and Case Manager Chevone Smith (collectively, the CoreCivic

Defendants) and Defendant Contract Monitor Christopher Brun have moved for summary judgment against Bowles under Federal Rule of Civil Procedure 56 (Doc. Nos. 204, 246), and Bowles has cross-moved for summary judgment against the defendants (Doc. No. 217). The parties have also filed several motions to quash or strike each other's summary judgment declarations and statements of undisputed material facts. (Doc. Nos. 222, 235, 239, 242, 249.)

Considering the record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court deny the parties' motions to quash and strike, grant in part and deny in part the CoreCivic Defendants' motion for summary judgment, grant Brun's motion for summary judgment, and deny Bowles's motion for summary judgment.

## I.    Background

### A.    Factual Background[1]

#### 1.    Events at TTCC

Bowles alleges that he arrived at TTCC on April 9, 2021, and that he refused to be transferred to TTCC's main compound because he was afraid for his safety. (Doc. No. 16.) According to Bowles, he told TTCC staff members that he had been mistaken for a gang member who had cooperated with law enforcement and had a hit on him for a lot of money. (*Id.*) Bowles

---

[1]     The facts in this section are drawn from Bowles's unverified complaint (Doc. Nos. 13, 16); the parties' statements of undisputed material facts (Doc. Nos. 206, 233, 247); Bowles's response to the CoreCivic Defendants' statement of undisputed material facts and exhibits (Doc. Nos. 221, 221-1); and sworn declarations and exhibits filed by the defendants (Doc. Nos. 207–216-1, 247-1–247-3).

Bowles's complaint is not verified, as Bowles does not affirm its allegations under penalty of perjury as required by 28 U.S.C. § 1746, and it therefore cannot be considered as evidence in support of his summary judgment arguments. *See Taylor v. Cunningham*, Case No. 3:22-cv-00296, 2024 WL 763343, at *1 n.1 (M.D. Tenn. Feb. 7, 2024), *report and recommendation adopted*, 2024 WL 758531 (M.D. Tenn. Feb. 23, 2024). The Court includes some of Bowles's unverified allegations to provide relevant context and not as evidence supporting Bowles's opposition to the defendants' summary judgment motions or Bowles's summary judgment motion.

alleges that, on May 21, 2021, Defendant Nakynia Jackson told him to go to the main compound. (*Id.*) Bowles refused and tried to explain the danger. (*Id.*) Bowles states that Hill, Murray, Rowe, and Moore arrived, handcuffed him, and took him to a housing unit in the main compound. (*Id.*) He states that the unit manager told Hill, Murray, Rowe, and Moore to take Bowles to segregation, but they refused, forced Bowles into a cell, removed the handcuffs, and locked him in. (*Id.*) Bowles alleges that a group of twenty-five gang members came to his cell intending to kill him, but someone who knew Bowles from another compound screamed out "That's not him!" and an officer assisted Bowles. (*Id.*) Bowles states that he eventually returned to his original cell outside the main compound. (*Id.*)

The CoreCivic Defendants assert that "Hill, Murray, Moore, and Rowe were not involved in any decision to transfer Bowles to the main compound at [TTCC] in May 2021" and that they "did not perceive, have reason to perceive, or consciously disregard any danger to Bowles during his transfer to the main compound . . . ." (Doc. No. 206, PageID# 1122–23, ¶¶ 13, 16.) Hill, Murray, and Rowe state in sworn declarations that they do not remember escorting Bowles to the main compound on May 21, 2021. (Doc. Nos. 208, 213, 214.)

Bowles alleges that, on July 26, 2021, Hill tried to force an unauthorized cellmate into Bowles's cell. (Doc. No. 16.) Bowles alleges that, when he refused the new cellmate, Hill choked him nearly to death, slammed him on the floor, and threatened to kill him if he wrote another grievance complaining about Hill. (*Id.*) Bowles alleges that he suffered injuries including neck swelling, back pain, head pain, and difficulty swallowing. (*Id.*) Hill disputes these allegations, stating in his summary judgment declaration that he "did not use any force against [Bowles] on July 26, 2021." (Doc. No. 208, PageID# 1132, ¶ 8.)

Bowles alleges that, on August 6 or 7, 2021, Hill again forced a cellmate into Bowles's cell and that Bowles and the cellmate argued until August 13, when the cellmate told Hill that he would no longer help Hill hurt Bowles. (Doc. No. 16.) Bowles alleges that Hill became enraged, choked Bowles on top of a sink while he was handcuffed, pulled Bowles out of the cell, picked him up and slammed him headfirst on the floor, pulled him to another cell and pushed him hard enough that he fell again. (*Id.*) Bowles alleges that he suffered injuries to his head, neck, abdomen, knees, and elbows. (*Id.*) He also states that Beaver and Brun watched this happen, did nothing to stop Hill, and refused to get medical help for Bowles.[2] (*Id.*)

Hill's summary judgment declaration tells a different story. Hill states that, "[o]n August 13, 2021, . . . [he] attempted to escort Bowles to a new cell following an argument between Bowles and his cellmate." (Doc. No. 208, PageID# 1132, ¶ 10.) "As [Hill] attempted to escort Bowles, he began to pull away from [Hill] and stated that he had no intention of submitting to the cell transfer." (*Id.* at ¶ 11.) Hill "ordered Bowles to continue to walk to his new cell, but he became combative and continued to pull away from [Hill]." (*Id.* at ¶ 12.) Because of Bowles's "repeated defiance, [Hill] used balance displacement techniques to place Bowles on the ground, restore order, and gain control of the situation." (*Id.* at ¶ 13.) Hill states that he "then ordered Bowles to stand up and walk with [Hill] toward [Bowles's] new cell" and that "Bowles complied with [Hill's] order without further incident." (*Id.* at ¶ 14.) Hill states that "[m]edical personnel [ ] responded and evaluated Bowles" and determined that he "did not suffer any serious injuries as a result of [Hill's] [ ] use of

---

[2]     Bowles's complaint alleges that this incident took place on August 13, 2021. (Doc. No. 16.) However, evidence in the summary judgment record supports a finding that this incident took place on August 11, 2021. Bowles submitted a grievance dated August 11, 2021, complaining that Hill injured him on that date, and Hill filed an incident report describing his August 11, 2021 attempts to move Bowles from one cell to another, including Hill's use of balance displacement techniques to force Bowles to comply. (Doc. No. 247-3.) Whether the incident took place on August 11 or 13, 2021, is not material for purposes of resolving the pending motions for summary judgment.

force." (*Id.* at ¶ 15.) Beaver states in his summary judgment declaration that he "was working as a shift supervisor at [TTCC] when [ ] Hill [ ] used balance displacement techniques to place [ ] Bowles [ ] on the ground following Bowles'[s] refusal to submit to a cell transfer." (Doc. No. 207, PageID# 1127, ¶ 3.) Beaver states that he did not "witness Hill use any force beyond what was required to achieve Bowles'[s] compliance and restore order" and "did not perceive, have reason to perceive, or consciously disregard any risk that Hill presented a danger to Bowles." (*Id.* at ¶¶ 5, 6.) Beaver states that he "did not deny Bowles access to medical care" and did not "disregard any requests Bowles made for [medical] care." (*Id.* at PageID# 1128, ¶ 9.) Like Hill, Beaver states that "Bowles was evaluated by medical staff" "[f]ollowing the incident" and "Bowles did not suffer any injuries as a result of Hill's conduct." (*Id.* at ¶¶ 7, 8.) Brun asserts in his summary judgment declaration that he "was not present for the cell extraction and movement of [ ] Bowles on August 13, 2021"; he "never witnessed a use of force or excessive use of force against [ ] Bowles"; and "Bowles did not request access to medical treatment from [Brun] on August 13, 2021, or in the days that followed." (Doc. No. 247-1, PageID# 1522, ¶¶ 7–9.)

### 2. Transfer to WCFA

Bowles alleges that on, February 1, 2022, Mitchell, Smith, Matthews, and other TTCC staff members told Bowles that he was being transferred to WCFA and that this transfer was retaliation for Bowles filing this lawsuit in January 2022. (Doc. No. 16.) The CoreCivic Defendants assert that "Matthews, Mitchell, and Smith were not involved in the decision to transfer Bowles from Trousdale to Whiteville and do not have authority to make or influence decisions regarding inmate placement." (Doc. No. 206, PageID# 1123, ¶ 15.)

Bowles alleges that, without being aggressive, he refused the transfer and told the TTCC staff members that it was dangerous for him to return to WCFA because of a prior conflict with gangs there. (Doc. No. 16.) Bowles alleges that the staff members sprayed him with mace,

5

aggressively pushed him, punched him in the ribs, and dragged him to a bus to be taken to WCFA. (*Id.*) Bowles states that he was in serious pain from injuries to his arm, head, and neck. (*Id.*) He alleges that Brun arrived on the scene, failed to obtain medical treatment for Bowles, and approved the transfer to WCFA. (*Id.*)

The CoreCivic Defendants again present a different version of the day's events. Smith's summary judgment declaration states that, "[d]ue to COVID-19, [Smith] was not at work on February 1, 2022," and "therefore was not involved in any use of force against [ ] Bowles" during his transfer to WCFA. (Doc. No. 215, PageID# 1264, ¶¶ 3, 4.) Matthews and Mitchell state that they assisted with Bowles's transfer from TTCC to WCFA on February 1, 2022, but deny that they personally used force on Bowles. (Doc. Nos. 211, 212.) Mitchell states that, "[i]n order to safely transport Bowles, [Mitchell] ordered him to submit to hand restraints through the food port of his cell" but that "Bowles refused [Mitchell's] order." (Doc. No. 212, PageID# 1252, ¶ 4.) Mitchell "repeated [the] order, but Bowles continued to refuse to submit to hand restraints." (*Id.* at ¶ 5.) Mitchell and Matthews state that their colleague Laroderick McDavid, Jr., "sought and obtained permission to spray [a short burst of] chemical agents into Bowles'[s] cell" and then did so. (Doc. No. 211, PageID# 1248, ¶ 5; Doc. No. 212, PageID# 1252, ¶ 6.) After McDavid sprayed the chemical agents into Bowles's cell, "Bowles complied with Mitchell's orders and submitted to hand restraints." (Doc. No. 211, PageID# 1249, ¶ 7; *see also* Doc. No. 212, PageID# 1253, ¶ 9.) Mitchell and Matthews state that "[m]edical personnel [ ] responded and evaluated Bowles, who did not sustain any serious injuries[,]" and Mitchell, Matthews, and McDavid "then escorted Bowles to the transport bus without further incident." (Doc. No. 211, PageID# 1249, ¶ 8; Doc. No. 212, PageID# 1253, ¶ 10.) Brun asserts that he "was not present for the February 1, 2022, cell extraction and movement of [ ] Bowles." (Doc. No. 247-1, PageID# 1522, ¶ 10.) He further states

that he "did not have any contact with [ ] Bowles on February 1, 2022, or in any way regarding [Bowles's] transfer from TTCC to Whiteville Correctional Facility." (*Id.*)

### 3. Events at WCFA

Bowles alleges that, from April 1 to 12, 2022, Huddleston, Rowe, and Lieutenant Warren forced him to share a cell with other inmates with whom he had conflicts by threatening Bowles with mace. (Doc. No. 16.) He alleges that, on April 12, 2022, Warren threatened to mace Bowles if he did not let a gang-affiliated inmate into his cell. (*Id.*) Bowles states that he had a panic attack because he had post-traumatic stress disorder (PTSD) from prior mace incidents and had been off of his medications for months. (*Id.*) Bowles alleges that he told Rowe about his PTSD and asked for mental health treatment, but Rowe laughed at Bowles and said that mental health staff would not come unless Bowles was going to harm himself. (*Id.*) Bowles alleges that, to get help, he said he was going to harm himself and, an hour later, Rowe called mental health services. (*Id.*)

Rowe states that he "do[es] not remember the April 12, 2022, incident that Bowes describes" but asserts that, "under no circumstances would [Rowe] mock Bowles if he had stated that he was going to 'blank out on PTSD.'" (Doc. No. 214, PageID# 1261, ¶ 8.) Rowe asserts that "[he] take[s] such allegations seriously and promptly would have contacted [his] supervisor and mental health services" and, "[a]s part of this process, [he] also would have ensured that a correctional officer or other individual was stationed in front of Bowles'[s] cell to monitor Bowles until mental health services arrived." (*Id.* at ¶¶ 9, 10.)

Bowles alleges that, on July 6, 2022, Huddleston told him to "cuff up" and go to a segregation cell to see a doctor. (Doc. No. 16, PageID# 83.) Bowles states that he initially refused because the doctor had told Bowles that the doctor would come to Bowles, but he then agreed to go if Huddleston called the doctor to confirm. (Doc. No. 16.) Bowles alleges that Huddleston became angry, knocked a food tray out of Bowles's hand, pushed Bowles into the middle of the

cell, and sprayed mace on Bowles's genitals. (*Id.*) Bowles alleges that Huddleston then forced him into a segregation cell and left Bowles with his skin burning for hours. (*Id.*)

Huddleston presents a different version of events in his summary judgment declaration. Huddleston states that he "was working as a shift supervisor" on July 6, 2022, and that, "[a]t approximately 12:40 p.m. that day, [he] was called to assist in escorting [ ] Bowles [ ] to the restrictive housing unit so that [Bowles] could see a doctor." (Doc. No. 209, PageID# 1135, ¶¶ 3, 4.) Huddleston states that, "[w]hen he first attempted to escort Bowles, [Bowles] became combative and refused to submit to restraints, despite repeated orders for him to do so." (*Id.* at ¶ 5.) Huddleston therefore "sought and obtained permission to spray chemical agents into Bowles'[s] cell." (*Id.* at ¶ 6.) Huddleston states that he "again asked Bowles to submit to restraints, but [Bowles] again refused" at which point Huddleston "sprayed chemical agents into Bowles'[s] cell to ensure compliance and restore order." (*Id.* at PageID# 1135–36, ¶¶ 7, 8.) Huddleston asserts that he "did not otherwise use force against Bowles." (*Id.* at PageID# 1136, ¶ 8.) He states that, "[f]ollowing [his] use of a chemical agent, medical personnel [ ] responded and evaluated Bowles, who then was allowed to decontaminate and did not sustain serious injuries." (*Id.* at ¶ 9.)

### 4.    **Bowles's Redress Attempts**

In support of his motion for summary judgment, Brun filed sworn declarations from TTCC Grievance Chairperson Cynthia Christian and WCFA Grievance Coordinator Ashley Wilkes. (Doc. Nos. 247-2, 247-3.) Christian and Wilkes attach exhibits to their declarations including a printout from the Tennessee Offender Management Information System (TOMIS) that shows a log of Bowles's grievances filed at TDOC institutions from January 2021 until April 2022:



eTomis

Menu　Favorites　Tools　Other Applications　Reports　Help　PROD (LIBG)

Grievance

Links ▾　Suspend ☐

TOMIS ID  00490357  Bowles, Mario　　Status  ACTV  Location  WCFA

Reset key fields

Refresh

Enter

| Grievance Id | Grievance Type | VI | L1 | L2 | L3 | Site | Posted Date | Resolved Date |
|---|---|---|---|---|---|---|---|---|
| 00353183 | MAI MAIL | | | | R | WCFA | 04/08/2022 | 04/25/2022 |
| 00352203 | AOI ACTIONS OF OTHE | | | | R | TTCC | 02/04/2022 | 05/26/2022 |
| 00352054 | SST SECURITY STAFF | Y | | | R | TTCC | 01/25/2022 | 05/02/2022 |
| 00351374 | SST SECURITY STAFF | Y | | | R | TTCC | 12/01/2021 | 12/16/2021 |
| 00350135 | SST SECURITY STAFF | | | | R | TTCC | 08/20/2021 | 09/02/2021 |
| 00349536 | SST SECURITY STAFF | Y | | | R | TTCC | 07/09/2021 | 08/12/2021 |
| 00349474 | UNI UNIT MANAGEMENT | | | | R | TTCC | 07/06/2021 | 08/09/2021 |
| 00349228 | SST SECURITY STAFF | | | | R | TTCC | 06/23/2021 | 07/16/2021 |
| 00348944 | OFP OFFICER PERFORM | | | | R | TTCC | 06/07/2021 | 07/16/2021 |
| 00346188 | MAI MAIL | | | | R | RMSI | 01/06/2021 | 04/05/2021 |

Search  ☐

(Doc. No. 247-2, PageID# 1556; Doc. No. 247-3, PageID# 1591.) The CoreCivic Defendants also submitted a sworn declaration from Wilkes in support of their motion for summary judgment. (Doc. No. 216.)

Christian asserts that "Bowles filed three (3) grievances mentioning the August Incident. On August 20, 2021, Bowles filed grievance # 6098/350135 . . . . On December 1, 2021, Bowles filed grievance # 6215/351374 . . . . On January 25, 2022, Bowles filed grievance # 6297/352054 . . . ." (Doc. No. 247-3, PageID# 1560–61, ¶ 15.) Christian attached copies of these grievances and TTCC's and TDOC's responses as an exhibit to her declaration. (Doc. No. 247-3.)

Wilkes asserts that Bowles "submitted a grievance" "[o]n November 30, 2021, . . . wherein he complained that other inmates provided him with 'molded bread' and messed up trays' during lunch." (Doc. No. 216, PageID# 1270, ¶ 8; Doc. No. 247-2, PageID# 1526, ¶ 15.) Wilkes also states that, "[o]n April 5, 2022, Bowles submitted a grievance . . . alleging that unspecified CoreCivic employees at Whiteville had tampered with his mail." (Doc. No. 216, PageID# 1270, ¶ 9; Doc. No. 247-2, PageID# 1526, ¶ 16.) Wilkes does not identify the grievance ID numbers

assigned to these grievances and does not attach copies of these grievances to her declarations. However, she states that:

> Bowles did not complain in either the November grievance, the April grievance, or any other grievance that any individuals at CoreCivic transferred him to Whiteville in February 2022 in retaliation for filing this lawsuit[;] . . . that any individuals at CoreCivic used excessive force against him during his February 2022 transfer to Whiteville[;] . . . that any individuals at CoreCivic failed to timely provide him with mental health treatment in April 2022[;] . . . [or] that any individuals at CoreCivic used excessive force against him in July 2022.

(Doc. No. 216, PageID# 1270, ¶¶ 10–13.) Wilkes also states that she "reviewed the grievances noted in [Bowles's] log and these grievances do not allege that [ ] Brun or any other TDOC staff retaliated against [Bowles] or was deliberately indifferent to serious medica[l] needs on or around February 1, 2022." (Doc. No. 247-2, PageID# 1526, ¶ 14.)

## B. Procedural History

On January 5, 2023, the Court granted Bowles's applications for leave to proceed *in forma pauperis* and screened Bowles's operative complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and 42 U.S.C. § 1997e(c)(1).[3] (Doc. Nos. 36, 37.) The Court found that Bowles had stated the following colorable claims for relief:

- an Eighth Amendment failure-to-protect claim against Case Manager Jackson, Lt. E[]mond Hill, Lt. Murray, Officer Rowe, and Officer Moore, arising from [Bowles's] transfer to the main compound of TTCC on May 21, 2021;

- an Eighth Amendment excessive force claim against Lt. Hill, and a First Amendment retaliation claim against Hill, arising from Hill's use of force at TTCC on July 26, 2021;

- an Eighth Amendment excessive force claim against Lt. Hill, an Eighth Amendment failure-to-protect claim against Contract Monitor Brun and Captain Beaver, and an Eighth Amendment claim for deliberate indifference to

---

[3] The Court explained in its screening memorandum opinion that it "considers Doc. Nos. 13 and 16 together as the operative complaint" in this action. (Doc. No. 36, PageID# 263, n.1.)

serious medical needs against Brun and Beaver, arising from Hill's use of force at TTCC on August 13, 2021;

• a First Amendment retaliation claim against Captain Mitchell, Case Manager Smith, Case Manager Mat[t]hews, and Case [*sic*] Manager Brun, an Eighth Amendment excessive force claim against Mitchell, Smith, and Mat[t]hews, and an Eighth Amendment claim for deliberate indifference to serious medical needs against Brun, arising from [Bowles's] transfer from TTCC to WCFA and the related use of force at TTCC on February 1, 2022;

• an Eighth Amendment claim for deliberate indifference to serious psychiatric needs against Officer Rowe and CoreCivic, arising from Rowe's denial of mental health treatment at WCFA on April 12, 2022;

• an Eighth Amendment excessive force claim against Captain [Huddleston] arising from [Huddleston's] use of force at WCFA on July 6, 2022; and

• an Eighth Amendment failure-to-protect claim against Officer [Jeree] Harris arising from Harris's disclosure of Plaintiff's separation list to another inmate at WCFA on July 16, 2022.

(Doc. No. 37, PageID# 298.) The Court allowed these claims to proceed for further development but dismissed the remaining claims and defendants in Bowles's complaint and dismissed Bowles's request for a transfer to protective custody at a federal facility. (Doc. No. 37.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (*Id.*)

The CoreCivic defendants and Brun appeared and answered Bowles's complaint.[4] (Doc. Nos. 76, 118, 130, 137, 178.)

On June 18, 2024, the CoreCivic Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 204), supported by a memorandum of law (Doc.

---

[4] Jackson and Harris have not been served with process, appeared in this action, or responded to Bowles's complaint. The Court addresses Bowles's claims against Jackson and Harris in a concurrently filed report and recommendation.

No. 205), a statement of undisputed material facts (Doc. No. 206), and several declarations and exhibits (Doc. Nos. 207–216-1).

On July 23, 2024, the Court received Bowles's motion for summary judgment under Rule 56 against all remaining defendants in this case. (Doc. No. 217.) On the same date, Bowles submitted a supporting memorandum of law (Doc. No. 218), a response to the CoreCivic Defendants' statement of undisputed material facts (Doc. No. 221), and exhibits (Doc. No. 221-1). Bowles also filed a motion to quash the CoreCivic Defendants' summary judgment declarations. (Doc. No. 222.) The CoreCivic Defendants filed a reply in support of their motion for summary judgment on July 31, 2024. (Doc. No. 230.)

On August 19, 2024, the Court received a filing from Bowles titled "Statement of Undisputed Material Fact in Support of Summary Judgment (Reply)[.]" (Doc. No. 233, PageID# 1417.) The CoreCivic Defendants and Brun responded in opposition to Bowles's motion for summary judgment (Doc. Nos. 234, 238) and filed motions to strike Bowles's statement of undisputed material facts (Doc. Nos. 235, 239). Bowles filed a motion asking the Court to deny the defendants' motions to strike (Doc. No. 242) and filed a reply in support of his summary judgment motion (Doc. No. 241). Bowles also submitted two other filings in support of his summary judgment motion. (Doc. Nos. 236, 244.)

Brun filed a motion for summary judgment under Rule 56 on December 27, 2024. (Doc. No. 246.) Brun supported his motion with a statement of undisputed material facts (Doc. No. 247), three declarations (Doc. Nos. 247-1–247-3), and a memorandum of law (Doc. No. 248). Bowles filed a motion to strike Brun's statement of undisputed material facts (Doc. No. 249) and filed a response in opposition to Brun's motion for summary judgment (Doc. No. 250). Brun responded

in opposition to Bowles's motion to strike (Doc. No. 251) and filed a reply in support of his motion for summary judgment (Doc. No. 252).

## II.     Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or,

13

alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*; *see also Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) ("The party must identify 'specific facts, as opposed to general allegations,' establishing the element." (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2016))). "'Conclusory statements unadorned with supporting facts' will not do." *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 844–45 (6th Cir. 2024) (quoting *Viet*, 951 F.3d at 823).

Where the parties file cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.     Analysis

### A.     Local Rule 56.01(f) and the Moving Parties' Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed

material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Furthermore, "[t]he response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.* Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Local Rule 56.01(f) provides that, "[i]f a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn. R. 56.01(f) (failure to respond).

The CoreCivic Defendants and Brun filed statements of undisputed material facts that comply with the formatting requirements of Local Rule 56.01(b). (Doc. Nos. 206, 247.) Bowles filed a response to the CoreCivic Defendants' statement of undisputed material facts that departs from the formatting requirements of Local Rule 56.01(c). (Doc. No. 221.) Bowles filed a motion to strike Brun's statement of undisputed material facts (Doc. No. 249), but he did not file the type of response to Brun's statement that is contemplated by Local Rule 56.01(c). Bowles also filed a statement of undisputed material facts in support of his own summary judgment motion (Doc. No. 233) that does not comply with Local Rule 56.01(b)'s formatting requirements. The CoreCivic

Defendants and Brun have moved to strike Bowles's statement of undisputed material facts but otherwise have not responded to it. (Doc. Nos. 235, 239.)

As explained below, the Court will consider the sufficiency of the parties' statements of undisputed material facts and responses in evaluating the parties' cross-motions for summary judgment. If the Court determines that an opposing party has not adequately responded to a properly asserted and supported fact, the Court must consider the asserted fact to be true for purposes for summary judgment. M.D. Tenn. R. 56.01(f). However, regardless of whether or how the opposing party responded to an assertion of fact, the moving parties must still carry their initial burden to show an absence of any genuine dispute of material fact. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. suppl. June 2024). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2024). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material

fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. suppl. June 2024) ("[I]f the movant bears the burden of proof on a claim at trial . . . [and] fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the moving parties offer in support of their motions to determine if it is sufficient to satisfy their initial summary judgment burden with respect to each claim before evaluating the nonmovants' responses in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)). Rule 56(c)(3) provides that the Court "need consider only" materials cited by the parties in their summary judgment briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

### B. The Parties' Motions to Quash and Motions to Strike

Federal Rule of Civil Procedure 12(f) provides that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th

Cir. 1953) ("[T]he action of striking a pleading should be sparingly used by the courts . . . [and] is a drastic remedy to be resorted to only when required for the purposes of justice.").

Rule 12(f) provides a basis for striking pleadings only. *See* Fed. R. Civ. P. 12(f); *see also* Fed. R. Civ. P. 7(a) (defining "pleadings" to include a complaint, a third-party complaint, an answer to a complaint, counterclaim, crossclaim, or third-party complaint, or a reply to an answer). It is not a vehicle for striking motions, briefs, or other filings that do not qualify as pleadings under the Federal Rules. *See, e.g.*, *Kremer v. Reddit, Inc.*, Case No. 2:21-cv-00038, 2021 WL 4909953, at *1 (M.D. Tenn. Oct. 18, 2021) (finding that "Rule 12(f) provides a basis for striking pleadings, not motions"); *Stability Sols., LLC v. Medacta USA, Inc.*, Case No. 3:23-cv-00072, 2024 WL 5248245, at *8 (M.D. Tenn. Dec. 30, 2024) (finding that "Rule 12(f) provides a basis for striking pleadings, not briefs").

### 1. Bowles's Motion to Quash the CoreCivic Defendants' Summary Judgment Declarations (Doc. No. 222)

Bowles has filed a motion to "quash" the CoreCivic Defendants' summary judgment declarations, arguing that the declarations are "forged" and untimely and that the CoreCivic Defendants are therefore in "default." (Doc. No. 222, PageID# 1367, 1369.) Neither the Federal Rules nor this Court's Local Rules provide for the filing of a motion to quash a declaration. To the extent that Bowles's motion to quash can be construed as a motion to strike under Rule 12(f), the motion should be denied on the ground that it is not directed to a pleading. *See Stability Sols., LLC*, 2024 WL 5248245, at *8.

### 2. The Parties' Motions to Strike Each Other's Statements of Undisputed Material Facts

The CoreCivic Defendants and Brun have filed motions to strike Bowles's statement of undisputed material facts. (Doc. Nos. 235, 239.) Bowles has filed a motion to deny the defendants'

motions to strike (Doc. No. 242) and a motion to strike Brun's statement of undisputed material facts (Doc. No. 249).

Neither the Federal Rules nor this Court's Local Rules provide for the filing of a motion to deny another party's motion. The Court will therefore construe Bowles's motion to deny the defendants' motions to strike his statement of undisputed material facts (Doc. No. 242) as his response in opposition to the defendants' motions.

The parties rely on Rule 12(f) as a basis for moving to strike each other's statements of undisputed material facts. (Doc. Nos. 235, 239, 249.) But statements of undisputed material facts submitted in support of summary judgment motions are not pleadings subject to Rule 12(f) motions to strike. *See* Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 12(f). Because the parties' motions to strike are not directed at pleadings, they do not comply with the requirements for motions to strike and should be denied. *See Stability Sols., LLC*, 2024 WL 5248245, at *8.

To the extent that the parties invoke the Court's inherent authority to strike improper filings from the docket, the Court declines to exercise that authority. Instead, the Court will consider the adequacy of the parties' statements of undisputed material facts in the course of addressing the pending motions for summary judgment.

### C. The Defendants' Summary Judgment Motions

#### 1. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires plaintiffs to exhaust all available administrative remedies, including prison grievance procedures, before filing an action addressing the conditions of their confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Himmelreich v. Fed. Bureau of Prison*s, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd sub nom. Simmons v. Himmelreich* 578 U.S. 621 (2016). The purpose of this exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address

19

complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525; *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006))). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution."). "[S]o long as the prison system has an administrative process that will review a prisoner's complaint . . . the prisoner must exhaust his prison remedies." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (alteration in original) (quoting *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999)).

"[T]he PLRA's exhaustion requirement is a strict rule, but there are a few exceptions." *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). The PLRA conditions the exhaustion requirement "'on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Id.* (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) "an administrative scheme . . . [is] so opaque that it becomes,

practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. The Sixth Circuit requires an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009)). If the record shows some effort, courts will assess "whether an inmate's efforts to exhaust were sufficient under the circumstances[.]" *Id.* at 224.

Failure to exhaust under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). If the defendants meet this burden, the plaintiff must "present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248).

To support their summary judgment exhaustion arguments, Huddleston, Matthews, Mitchell, Rowe, Smith, CoreCivic, and Brun have presented evidence that TTCC and WCF

employ a three-level grievance procedure in accordance with TDOC Policy 501.01.[5] (Doc. Nos. 216, 216-1, 247-2.) At the first level (Level I), a person incarcerated at TTCC or WCF must file a grievance "within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance" and the grievance chairperson, who is "assigned by the Warden[ ] to supervise the inmate grievance process[,]" "shall review all grievances received and log them as received . . . ." (Doc. No. 216-1, PageID# 1274, ¶¶ IV.I, VI.C.1.) After the grievance chairperson receives a grievance, a supervisor prepares and signs a response to the grievance and returns it to the chairperson "within five working days of receipt." (*Id.* at PageID# 1275, ¶ VI.C.1.) The chairperson reviews the supervisor's response, writes his or her own response on the grievance form, and returns it to the grievant within "a seven working-day time limit" that "begin[s] on the day the grievance begins to be processed." (*Id.*) The grievant may appeal to the second level (Level II) "[w]ithin five calendar days of being notified of the Level I response[.]" (*Id.* at ¶ VI.C.2.) At the second level, the institution's grievance committee holds a hearing "within five working days of an appeal's filing" and drafts and forwards a proposed response to the warden "[w]ithin five working days of the hearing[.]" (*Id.*) The warden makes a decision "[w]ithin seven working days of receipt" and forwards his or her response back to the grievance chairperson, who "will allow the grievant to review the grievance materials and responses" "[w]ithin five working days of receiving the Warden's[ ] response[.]" (*Id.*) The "grievant may appeal the Level II response within five calendar days of receipt of that response." (*Id.* at ¶ VI.C.3.) At the third level (Level III), TDOC's Assistant Commissioner of Prisons or his or her designee reviews the

---

[5]    Brun filed a version of TDOC Policy 501.01 that became effective on November 2, 2022 (Doc. No. 247-2), but Bowles's claims against Brun relate to conduct in August 2021 and February 2022 (Doc. Nos. 13, 16). The Court will therefore rely on the version of TDOC Policy 501.01 in the record that became effective May 1, 2021 (Doc. No. 216-1) and remained in effect until November 2, 2022 (Doc. No. 247-2).

grievance, prepares a response, and sends it back "to the grievance chairperson for distribution within 25 working days of the date the appeal was received." (*Id.*) The Level III "response is final and is not subject to appeal." (*Id.*) TDOC policy states that, "[i]f a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process[.]" (*Id.* at PageID# 1276, ¶ VI.D.)

### a. The Core Civic Defendants

The CoreCivic Defendants have not raised exhaustion as an affirmative defense to Bowles's First and Eighth Amendment claims arising out his transfer to TTCC's main compound on May 21, 2021; Hill's alleged use of force against Bowles on July 26, 2021; or Hill's alleged use of force against Bowles on August 13, 2021. However, the CoreCivic Defendants argue that Bowles failed to exhaust available administrative remedies for his Eighth Amendment excessive force and First Amendment retaliation claims against Matthews, Mitchell, and Smith based on his February 1, 2022 transfer from TTCC to WCFA; his Eighth Amendment deliberate indifference claims against CoreCivic and Rowe based on Rowe's alleged denial of mental health treatment on April 12, 2022; and his Eighth Amendment excessive force claim against Huddleston based on Huddleston's alleged use of force on July 6, 2022. (Doc. No. 205.)

To support their argument that Bowles did not administratively exhaust these claims, the CoreCivic Defendants provide Wilkes's sworn assertions that "Bowles did not complain in . . . any [ ] grievance that any individuals at CoreCivic transferred him to Whiteville in February 2022 in retaliation for filing this lawsuit", "that any individuals at CoreCivic used excessive force against him during his February 2022 transfer to Whiteville", "that any individuals at CoreCivic failed to timely provide him with mental health treatment in April 2022", or "that any individuals at CoreCivic used excessive force against him in July 2022." (Doc. No. 216, PageID# 1270, ¶¶ 10–

13.) The CoreCivic Defendants have thus provided record evidence to show that Bowles did not include the facts underlying these claims in any grievance.

Bowles responds that he "filed a Title VI" grievance at WCFA "on April 12th, 2022" complaining about his February 1, 2022 transfer and that "[t]he grievance was . . . spoken about on more than one grievance."[6] (Doc. No. 221, PageID# 1350, ¶ 2.) He states that his "claims against CoreCivic and [ ] Rowe [were] also put into [a] grievance and Title IV complaint" and that he "personally gave" a "grievance complaint" about Huddleston "to Warden Leed Chance." (*Id.* at PageID# 1350, 1351, ¶¶ 4, 5.) But Bowles's statements are argument, not evidence, and Bowles has not identified any evidence in the summary judgment record to support his assertions. Bowles also argues that "exhaustion of remedies [is] not necessary for [claims brought under] 42 U.S.C. § 1983." (Doc. No. 221, PageID# 1350, ¶ 2.) Bowles relies on *Damico v. California*, 389 U.S. 416 (1967), to support this argument, but *Damico* does not help Bowles for two reasons: First, the PLRA was not enacted until 1996, almost thirty years after *Damico* was decided and, second, the plaintiffs in *Damico* were not incarcerated and, thus, had no institutional grievance procedure to exhaust.[7]

Because they have provided record evidence to support their argument that Bowles did not exhaust his claims against them and Bowles has not provided evidence sufficient to create a genuine issue of material fact that he did, Matthews, Mitchell, and Smith are entitled to summary

---

[6]    Title VI of the Civil Rights Act of 1964 prohibits entities receiving federal funds from discriminating on the basis of race, color, or national origin. 42 U.S.C. § 2000d; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (recognizing that Title VI "prohibits race discrimination . . . in all programs receiving federal funds" (citing 42 U.S.C. § 2000d)).

[7]    Congress initially included a discretionary exhaustion provision for § 1983 actions filed by incarcerated plaintiffs in 1980 through the Civil Rights of Institutionalized Persons Act, Pub. L. No. 96-246, § 7, 94 Stat. 349, 352 (1980), as amended, 42 U.S.C. § 1997e (1994 ed.). *See Porter*, 534 U.S. at 523.

judgment on Bowles's First and Eighth Amendment claims against them based on his February 1, 2022 transfer from TTCC to WCFA; CoreCivic and Rowe are entitled to summary judgment on Bowles's Eighth Amendment deliberate indifference claims against them based on Rowe's alleged denial of mental health treatment on April 12, 2022; and Huddleston is entitled to summary judgment on Bowles's Eighth Amendment excessive force claim based on Huddleston's alleged use of force on July 6, 2022.

### b. Brun

Brun argues that Bowles did not exhaust available administrative remedies for his Eighth Amendment failure-to-protect and deliberate indifference claims against Brun based on Brun's alleged failure to protect Bowles against Hill's use of force and Brun's alleged denial of medical care to Bowles on August 13, 2021, or for Bowles's First Amendment retaliation and Eighth Amendment deliberate indifference claims against Brun arising out of Bowles's February 1, 2022 transfer from TTCC to WCFA. (Doc. No. 248.)

### i. Eighth Amendment Failure-to-Protect and Deliberate Indifference Claims from August 2021

With respect to Bowles's August 2021 Eighth Amendment claims, Brun relies on Christian's declaration statements that "the grievances noted in [Bowles's] log . . . do not allege that [ ] Brun failed to protect [Bowles] or was deliberately indifferent to serious medical needs on or around August 13, 2021." (Doc. No. 247-3, PageID# 1560.) Christian declares that "Bowles did not complain in . . . any [ ] grievance that . . . Brun was present at the August Incident", that Brun "failed to take actions that would have prevented [Bowles's] alleged injuries from the August Incident", or "that [Bowles] requested medical assistance or access to medical assistance from . . . Brun" following the incident. (*Id.* at PageID# 1561, ¶¶ 16–18.)

In support of these assertions, Christian attached a copy of a grievance that Bowles signed on August 11, 2021, and copies of TTCC's and TDOC's responses to that grievance. (Doc. No. 243-7.) Bowles states in this grievance that, among other things, "[o]n August 11, 2021[,]" at "approx[imately] 1pm[,]" "Lt. Hill" "threat[ened]" him and caused him "bodily harm . . ." and that Hill "keep[s] consistently harassing me." (*Id.* at PageID# 1627.) Bowles requested that Hill be added to Bowles's "list of incompatible[s] . . . ." (*Id.* at PageID# 1628.)

The TTCC grievance chairperson received this grievance on August 20, 2021, and assigned it grievance number 6095/350135. (Doc. No. 247-3.) On the same date, the TTCC grievance chairperson signed an inappropriate grievance notification stating that the grievance was being returned to Bowles as inappropriate because, under TDOC "Policy #501.01 VI.(C)(1)[,]" "[g]rievances must be filed within seven calendar days of the occurrence giving rise to the grievance" and "[a] complaint shall not address multiple issues." (*Id.* at PageID# 1629.) The record contains a supervisor response dated August 25, 2021, that is only partially legible; it states that, "[d]ue to inmate refusing to leave the cell the allegation made can not be [  ]ted. Inmate can request to be moved. Please look at discplinary [*sic*] in TOMIS." (*Id.* at PageID# 1630.) The record also contains an Incident Statement that Hill completed and signed on August 25, 2021. (Doc. No. 247-3.) Notably, Hill states that Brun was present for and involved in the August incident:

> On August 11th, 2021[,] at approximately 1300[,] inmate #490357 Bowles, refused to move into a cell in Alpha[.] Alpha got permission from Ch[ie]f Warren, and TDOC Brun[ ] to deploy OC.[8] He cuffed up and I began to escort him to the cell[,] he then said he wasn't going into the cell, and began to pull away and become combative so I Lt. Hill used balance[ ] displacement techniques to get him to comply with directives. Ch[ie]f Couns[e]lor Smith-Gunn, Ch[ie]f Warren, Ch[ie]f Beaver, TDOC Brun[ ], [and] Warden Frink were all present during this incident.

---

[8]     "OC" stands for "oleoresin capsicum (OC) spray, [which is] similar to pepper spray." *Wright v. City of Canton*, 138 F. Supp. 2d 955, 958 (N.D. Ohio 2001).

(*Id.* at PageID# 1632.)

Bowles appealed the first level response on August 27, 2021. (Doc. No. 247-3.) On August 30, 2021, the TTCC Inmate Grievance Committee Chairman signed a response stating "[n]o hearing held . . . [g]rievance deemed inappropriate per policy 501.01 VI(C)(1)." (*Id.* at PageID# 1633.) On the same day, the TTCC Warden marked a box indicating that he agreed with the proposed response. (*Id.*)

Bowles appealed the second level response on September 1, 2021. (Doc. No. 247-3.) On September 2, 2021, a TDOC assistant commissioner of prisons checked boxes indicating that they concurred with the supervisor's response and denied Bowles's appeal. (*Id.*) The TDOC assistant commissioner of prisons also wrote:

> Upon reviewing your grievance and documentation, Policy 404.09, Protective Services, Section VI. (E)(2) states, "When extreme circumstance warrant the separation of an inmate from a staff member for significant and verifiable safety reasons (e.g., employee is the victim of an inmate assault resulting in serious injury) or serious conflict [of] interest (e.g., staff member is closely related to the inmate or the inmate's victims of a violent sexual offense), an incompatible may be filed. Such shall be affected subsequent to inquiry, written documentation, and Warden/s/Superintendent's approval." You have failed to substantiate that an incompatible should be placed on the staff member you listed in your grievance.

(*Id.* at PageID# 1634.) Thus, there is no dispute that Bowles pursued this grievance through all three levels of TTCC and TDOC's grievance procedures. (Doc. No. 247-3.)

While the record reflects that Bowles did not specifically mention Brun in the August 11, 2021 grievance, TTCC's response to this grievance includes Hill's statement identifying Brun as a witness to and participant in the incident. (Doc. No. 247-3.) However, neither Bowles's grievance nor Hill's response includes or describes a complaint by Bowles that any other TTCC or TDOC official failed to protect him from Hill or that Bowles requested or required medical assistance following the incident. Even construing the record evidence in the light most favorable to Bowles as required, Brun has carried his initial burden to show that Bowles's August 11, 2021

grievance did not afford TTCC and TDOC officials a fair opportunity to address Bowles's claims that Brun failed to protect him from Hill and was deliberately indifferent to his serious medical needs. *See Porter*, 534 U.S. at 525; *Reed-Bey*, 603 F.3d at 324.

Bowles argues generally that "the record would show . . . un-processed grievance[s] . . . ." (Doc. No. 250, PageID# 1652; *see also* Doc. No. 217, PageID# 1290 (asserting that Wilkes "refus[ed] . . . to process and forward particular grievances, Title VI[,] and other complaints").) But Bowles has not identified any evidence in the summary judgment record to create a genuine issue of material fact regarding whether he exhausted his August 2021 failure-to-protect and deliberate indifference claims against Brun. Brun is therefore entitled to summary judgment on these claims.

<blockquote>

ii.      **First Amendment Retaliation and Eighth Amendment Deliberate Indifference Claims from February 2022**

</blockquote>

Brun argues that Bowles failed to exhaust his First Amendment retaliation and Eighth Amendment deliberate indifference claims against Brun arising out of the February 1, 2022 transfer from TTCC to WCFA. (Doc. No. 248.) Brun relies on Wilkes's sworn assertion that Bowles's "grievances do not allege that [ ] Brun or any other TDOC staff retaliated against [Bowles] or was deliberately indifferent to serious medica[l] needs on or around February 1, 2022." (Doc. No. 247-2, PageID# 1526, ¶ 14.) And he relies on Wilkes's assertion that "Bowles did not complain in . . . any [ ] grievance that . . . Brun transferred him to Whiteville in February 2022 in retaliation for filing this lawsuit" or that "Brun was deliberately indifferent to serious medical needs regarding his February 2022 transfer to Whiteville." (*Id.* at PageID# 1527, ¶¶ 17, 18.) Brun has carried his initial summary judgment burden to show that Bowles did not exhaust administrative remedies for his First and Eighth Amendment claims against Brun arising out of the February 1, 2022 transfer.

28

Bowles has not pointed to any record evidence sufficient to create a genuine dispute of material fact that he exhausted these claims. Brun is therefore entitled to summary judgment on Bowles's First Amendment retaliation and Eighth Amendment deliberate indifference claims from February 2022.

### 2. Bowles's § 1983 Claims

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). The remaining claims in Bowles's complaint allege that Hill violated Bowles's First Amendment rights and Hill, Moore, Murray, and Rowe violated his Eighth Amendment rights on May 21, July 26, and/or August 13, 2021. (Doc. Nos. 13, 16.)

The CoreCivic Defendants have not disputed that they are state actors for purposes of liability under § 1983. The only question before the Court at summary judgment is whether the record contains genuine issues of material fact that Hill, Moore, Murray, and Rowe violated Bowles's First and Eighth Amendment rights.

### a. Eighth Amendment Excessive Force Claims

The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, protects convicted incarcerated people from cruel and unusual punishments, including the use of "excessive physical force . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). Federal courts recognize that, "[o]n occasion,

'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (second alteration in original) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). However, "[p]rison officials [ ] violate the Eighth Amendment when their 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Id.* (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "The 'core judicial inquiry[ ]'" in considering Eighth Amendment excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). In addition to this subjective inquiry, the objective component of an Eighth Amendment excessive force claim "'requires the pain inflicted to be "sufficiently serious."'" *Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383). This component does no "require[ ] a showing of significant injury[.]" *Williams*, 631 F.3d at 384. The "inquiry should focus on 'the nature of the force rather than the extent of the injury.'" *Id.* (quoting *Wilkins*, 559 U.S. at 39).

Bowles alleges that Hill used excessive force against him in violation of the Eighth Amendment on July 26 and August 13, 2021. (Doc. Nos. 13, 16.) Hill argues that he is entitled to summary judgment on Bowles's excessive force claims because, based on the record evidence, there are no genuine questions of material fact that Hill did not use any force against Bowles on July 26, 2021, and that, on August 13, 2021, Hill only "used balance displacement techniques to apply a restrained use of force to gain control of the situation and restore order." (Doc. No. 205, PageID# 1114.)

Hill points to his sworn summary judgment testimony that he "did not use any force against [Bowles] on July 26, 2021." (Doc. No. 208, PageID# 1132, ¶ 8; *see also* Doc. No. 206,

PageID# 1124, ¶ 21 (citing Hill's declaration in support of the assertion that "Hill did not use force against Bowles in July 2021").) In response to the CoreCivic Defendants' statement of undisputed material facts, Bowles asserts that, in "July 2021[,]" "Hill used excessive force by jumping on [Bowles] and choking him till he could not see or hear anything and told him if he wrote another grievance on him he would kill [Bowles]." (Doc. No. 221, PageID# 1352.) These unsworn statements mirror the allegations in Bowles's complaint. Bowles has not identified any specific record evidence sufficient to create a genuine question of fact that Hill used excessive force against him on July 26, 2021. *See, e.g.*, *DeVore*, 118 F.4th at 844 ("Parties must go 'beyond the pleadings' in advancing, or defending against, a summary judgment motion." (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed. suppl. June 2024))); *id.* at 845 ("Just as a plaintiff may not rely on conclusory allegations to proceed past the pleading stage, so too a plaintiff may not rely on conclusory evidence to proceed past the summary-judgment stage." (quoting *Viet*, 951 F.3d at 823)). "Ultimately, the court must 'examine the pleadings to ascertain what issues of fact they present and then consider the affidavits, depositions, admissions, interrogatory answers and similar material to determine whether any of those issues are real and genuine.'" *Id.* at 845 (quoting 10A Wright & Miller, *Federal Practice and Procedure* § 2721). Construing the record evidence in the light most favorable to Bowles, there is insufficient evidence to support a reasonable jury finding that Hill used excessive force against Bowles on July 26, 2021.

Turning to the August 2021 excessive force claim, Hill relies on his sworn assertions that, "[o]n August 13, 2021, . . . [Hill] attempted to escort Bowles to a new cell following an argument between Bowles and his cellmate" and Bowles "began to pull away from [Hill] and stated that he had no intention of submitting to the cell transfer." (Doc. No. 208, PageID# 1132, ¶¶ 11, 12.) Hill further states that, "[a]s a result of Bowles'[s] repeated defiance, [Hill] used balance displacement

techniques to place Bowles on the ground, restore order, and gain control of the situation." (*Id.* at ¶ 13.) He states that he "did not and [has] never intended to cause Bowles harm through the force that [he] used beyond what was necessary to achieve compliance and restore order." (*Id.* at ¶ 16.) And Hill asserts that "[m]edical personnel [ ] responded and evaluated Bowles, who did not suffer any serious injuries as a result of [Hill's] [ ] use of force." (*Id.* at ¶ 15.) This evidence satisfies Hill's initial burden to show the absence of a genuine issue of material fact regarding Bowles's August 2021 excessive force claim.

The burden therefore shifts to Bowles to show more than "[t]he mere existence of a scintilla of evidence in support of" his position. *Anderson*, 477 U.S. at 252. In response to the CoreCivic Defendants' statement of undisputed material facts, Bowles states that Hill's use of force in August 2021 was "shown on camera . . . ." (Doc. No. 221, PageID# 1353, ¶ 22.) Specifically, Bowles alleges that:

> Emond Hill is shown on camera with Samuel Beaver handcuffing [Bowles] and jacking and choking [Bowles] the moment [ ] Hill came into the cell and air lifted [Bowles] in and nearly over [Hill's] head and slam[m]ed [Bowles] head and shoulder first on the floor, applied his body weigh on [Bowles] while nearly br[e]aking his arm . . . . Hill th[e]n is shown on camera pushing [Bowles] into a cell while in handcuff[s] causing [Bowles] to fall on his head and shoulder again injuring his abdominal[s] again and somehow his hand and lower arm got cut . . . and he was bleeding. [ ] Hill started to come in [the] cell to cause more harm and Serg[e]ant Steinburg stop[ped] him."

(*Id.*) Bowles also states that Hill's statements about Bowles receiving medical attention after the August 2021 use of force are "false" and repeats his allegation that the defendants denied him medical care after the August 2021 incident. (*Id.* at ¶ 26.) Despite Bowles's description of camera footage, there is no such video evidence in the summary judgment record. Bowles has not identified any record evidence to support his unsworn assertions that, in August 2021, Hill applied force maliciously and sadistically to cause Bowles harm and not in a good-faith effort to maintain or restore discipline. *See Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). Nor has Bowles

identified specific record evidence to support a reasonable jury finding that the pain inflicted by such force was sufficiently serious. *See Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383).

Hill is therefore entitled to summary judgment on Bowles's Eighth Amendment excessive force claims.

### b. Eighth Amendment Failure-to-Protect Claims

The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" and "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer*, 511 U.S. at 832, 833 (first quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984); and then quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1998)). Eighth Amendment failure-to-protect claims have an objective and subjective component. "In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent 'to a substantial risk of serious harm' to the inmate." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 825). To show deliberate indifference, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 829); *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) ("A 'sufficiently culpable state of mind' is one in which 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Farmer*, 511 U.S. at 837)).

### i. May 2021 Claims Against Hill, Moore, Murray, and Rowe

Hill, Moore, Murray, and Rowe argue that they are entitled to summary judgment on Bowles's Eighth Amendment failure-to-protect claims related to the May 1, 2021 transfer to TTCC's main compound because Bowles cannot prove the subjective element of his claims against them. Specifically, they argue that they "were not aware of any threats to [Bowles's] safety with respect to his transfer to the main compound at Trousdale." (Doc. No. 205, PageID# 1111.) Hill, Murray, and Rowe point to their sworn summary judgment testimony that they "do not remember escorting [Bowles] to the main compound at Trousdale on May 21, 2021," and, regardless, they "would not have been involved in any decision to transfer Bowles to the main compound" and "[u]nder no circumstances would [they] have consciously disregarded any danger to Bowles during his transfer . . . ." (Doc. No. 208, PageID# 1131, ¶¶ 3–5; Doc. No. 13, PageID# 1256, ¶¶ 3–5; Doc. No. 214, PageID# 1260, ¶¶ 3–5.) This evidence, considered with the record evidence as a whole, is sufficient to carry Hill's, Murray's, and Rowe's initial burden to show that there is no genuine dispute that Hill, Murray, and Rowe lacked the subjective mental state necessary for Bowles to succeed on his Eighth Amendment failure-to-protect claims against them.

Moore, however, has not submitted a summary judgment declaration, and the CoreCivic Defendants have not identified any record evidence showing Moore's subjective knowledge of the alleged danger to Bowles on the TTCC main compound. The Court cannot infer Moore's subjective perception of any threat to Bowles from the other defendants' declarations. Accordingly, because there is no record evidence to show that Moore did not subjectively perceive any threat to Bowles on the TTCC main compound—and because the CoreCivic Defendants' only

other argument in support of summary judgment on this claim fails as a matter of law[9]—Moore has not carried her initial burden to show that she is entitled to summary judgment on Bowles's Eighth Amendment failure-to-protect claim against her.

Bowles has not identified any specific record evidence regarding Hill's, Murray's, and Rowe's mental state during his May 1, 2021 transfer to the TTCC main compound. He argues generally that these defendants "acted in disregard[ ] of the truth" and "forced" him to the main compound "to be killed" because they wanted "the alleged reward[ ] concerning the hit-man." (Doc. No. 221, PageID# 1351, ¶ 13.) Again, these unsworn assertions echo the allegations in Bowles's complaint and are insufficient to create a genuine dispute of material fact regarding Bowles's Eighth Amendment failure-to-protect claims against Hill, Murray, and Rowe.

Hill, Murray, and Rowe are therefore entitled to summary judgment on these claims.

### ii.  August 2021 Claim Against Beaver

Beaver argues that he is entitled to summary judgment on Bowles's Eighth Amendment failure-to-protect claim against him arising out of the August 2021 incident because Bowles cannot satisfy the subjective element of his claim. (Doc. No. 205.) Specifically, Beaver argues that he

---

[9]  The CoreCivic Defendants argue generally that they are entitled to summary judgment on all of Bowles's Eighth Amendment claims "because Bowles did not suffer more than a *de minimus* physical injury" as required to recover under § 1997e(e) of the PLRA. (Doc. No. 205, PageID# 1116.) But neither the CoreCivic Defendants as a group nor Moore individually has addressed the Sixth Circuit's holding in *Small v. Brock*, 963 F.3d 539, 543–44 (6th Cir. 2020), that § 1997e(e) does not bar claims for "punitive damages, injunctive and declaratory relief, and 'such other relief as it may appear that plaintiff is entitled'" and may not bar plaintiffs from seeking compensatory damages for alleged constitutional injuries. *See also King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (holding that "the plain language of [42 U.S.C. § 1997e(e)] does not bar claims for constitutional injury that do not also involve physical injury"). Bowles's complaint seeks $22 million in damages, including punitive damages. (Doc. Nos. 13, 16.) The CoreCivic Defendants as a group and Moore individually therefore have not carried their initial burden to show that they are entitled to summary judgment on Bowles's Eighth Amendment claims as a matter of law on this ground.

"did not perceive, have reason to perceive, or consciously disregard any risk that Hill somehow posed a danger to Bowles." (*Id.* at PageID# 1111.) Beaver relies on his sworn summary judgment testimony that he "was working as a shift supervisor at Trousdale when [ ] Hill [ ] used balance displacement techniques to place [ ] Bowles [ ] on the ground following Bowles'[s] refusal to submit to a cell transfer" and that "[a]t no point did [Beaver] witness Hill use any force beyond what was required to achieve Bowles'[s] compliance and restore order." (Doc. No. 207, PageID# 1127, ¶¶ 3, 6.) Beaver states that he therefore "did not perceive, have reason to perceive, or consciously disregard any risk that Hill presented a danger to Bowles." (*Id.* at ¶ 5.) This evidence is sufficient to carry Beaver's initial burden to show the absence of any genuine issue of fact that Beaver lacked the subjective mental state necessary for Bowles to succeed on his failure-to-protect claim against Beaver.

Bowles responds that "Beaver consciously watched [ ] Hill use unnecessary excessive force and assault [Bowles] and did nothing or [*sic*] said anything." (Doc. No. 221, PageID# 1352, ¶ 19.) Bowles again asserts that the incident is "on camera." (*Id.*) But Bowles has not identified any specific evidence in the summary judgment record to support these unsworn assertions. He therefore has not shown the existence of a genuine issue of material fact, and Beaver is entitled to summary judgment on this failure-to-protect claim.

### c. Eighth Amendment Deliberate Indifference

Bowles alleges that, following the August 2021 incident, Beaver denied Bowles's request for medical attention and was therefore deliberately indifferent to Bowles's serious medical needs in violation of the Eighth Amendment. (Doc. Nos. 13, 16.)

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v.*

*Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). A deliberate indifference to medical needs claim against a prison official has objective and subjective components. *Farmer*, 511 U.S. at 834; *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Beaver argues that Bowles cannot satisfy the subjective component because "Beaver did not refuse to obtain medical treatment for Bowles following an alleged assault by Hill in August 2021." (Doc. No. 205, PageID# 1111.) Beaver cites his sworn statements in the summary judgment record that "Bowles did not suffer any injuries as a result of Hill's conduct", that, "[f]ollowing the incident, Bowles was evaluated by medical staff with no further incident", and that Beaver "did not deny Bowles access to medical care, nor did [he] disregard any requests

Bowles made for said care." (Doc. No. 207, PageID# 1128, ¶¶ 7–9.) Beaver has therefore carried his initial burden to show there is no genuine issue of material fact that he was not deliberately indifferent to Bowles's serious medical needs following the August 2021 incident.

In response to the CoreCivic Defendants' statement of undisputed material facts, Bowles repeats his unsworn allegations that "Beaver . . . denied [Bowles] medical treatment after he [yelled] in pain and . . . showed the nurse he was bleeding" because Beaver "didn't want a report on these injuries[.]" (Doc. No. 221, PageID# 1352, ¶ 20.) But Bowles has not identified any evidence in the summary judgment record to support these allegations. He therefore has not shown the existence of a genuine dispute of material fact regarding his deliberate indifference to medical needs claim against Beaver.

### d.      First Amendment Retaliation

By alleging that Hill punished him with physical force for filing grievances against Hill, Bowles raises a retaliation claim that implicates "the First Amendment's protection of the right to 'petition the Government for a redress of grievances.'" *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (quoting U.S. Const. amend. I). "When a prison official retaliates against a prisoner for exercising the First Amendment right to access the courts or to file a grievance, the official '"threatens to inhibit exercise of the . . . right"' and violates the Constitution." *McClure v. Johnson*, Case No. 1:15-cv-00035, 2019 WL 13444614, at *15 (M.D. Tenn. July 24, 2019) (alteration in original) (quoting *Thaddeus-X*, 175 F.3d at 394 n.4), *report and recommendation adopted*, 2019 WL 13444613 (M.D. Tenn. Aug. 13, 2019). To succeed on his First Amendment retaliation claim against Hill, Bowles must show that:

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 394).

Hill argues that he is entitled to summary judgment on Bowles's retaliation claim because "there is no evidence that [Hill] . . . acted adversely to [Bowles] in connection with any protected activity." (Doc. No. 205, PageID# 1118.) Hill cites his sworn assertions that he "did not use any force against [Bowles] on July 26, 2021," and that "under no circumstances would [Hill] use force against Bowles in connection with his decision to file this lawsuit or to submit a grievance, including a grievance that named [Hill.]" (Doc. No. 208, PageID# 1132, ¶¶ 8, 9.) Hill has therefore carried his initial burden to show that Bowles cannot succeed on his First Amendment retaliation claim against Hill.

The Court has already determined that Bowles has not identified sufficient record evidence to create a genuine dispute of fact that Hill used any force against him on July 26, 2021. Further, Bowles has not identified any record evidence to support a reasonable jury finding that Hill had the required retaliatory intent.

Hill is therefore entitled to summary judgment on Bowles's First Amendment retaliation claim.

### D.    Bowles's Summary Judgment Motion

Bowles's motion for summary judgment does not comply with Local Rule 56.01(b)'s requirements. M.D. Tenn. R. 56.01(b) (statement of undisputed facts). Bowles's statement of undisputed material facts (Doc. No. 233) does not set forth each fact "in a separate, numbered paragraph" and does not support his asserted facts "by specific citation to the record." *Id.* Because Bowles has not complied with this Court's Local Rules, his motion for summary judgment may be denied for that reason.

Furthermore, to the extent that Bowles moves for summary judgment on his claims against Harris and Jackson the motion should be denied because, as the Court explains in a concurrent

report and recommendation, Bowles has not effected service of process on Harris and Jackson and the Court lacks jurisdiction to adjudicate his claims against them.

The Court's analysis of the CoreCivic Defendants' motion for summary judgment and Brun's motion for summary judgment shows that Bowles has not provided evidence from which the Court could find that he has established no genuine issue of material facts as to any of his claims, particularly when construing the record evidence in the light most favorable to the defendants, as the Court must do when deciding Bowles's motion. Denying Bowles's motion on the merits is therefore also appropriate. This is true even with respect to Bowles's remaining Eighth Amendment failure-to-protect claim against Moore—Bowles has not identified any specific evidence in the summary judgment record sufficient to meet his initial burden to show that he is entitled to summary judgment on this claim as a matter of law. Denial of Bowles's motion for summary judgment on the merits is therefore also appropriate.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that:

- Bowles's motion to quash the CoreCivic Defendants' summary judgment declarations (Doc. No. 222) be DENIED;

- Bowles's motion to deny the defendants' motions to strike his statement of undisputed material facts (Doc. No. 242) be CONSTRUED as Bowles's response in opposition to those motions;

- The CoreCivic Defendants' and Brun's motions to strike Bowles's statement of undisputed material facts (Doc. Nos. 235, 239) be DENIED;

- Bowles's motion to strike Brun's statement of undisputed material facts (Doc. No. 249) be DENIED;

- The CoreCivic Defendants' motion for summary judgment (Doc. No. 204) be DENIED IN PART with respect to Bowles's Eighth Amendment failure-to-protect claim against Moore and GRANTED IN PART with respect to Bowles's remaining claims against CoreCivic, Beaver, Hill, Huddleston, Matthews, Mitchell, Murray, Rowe, and Smith;

- Brun's motion for summary judgment (Doc. No. 246) be GRANTED; and

- Bowles's motion for summary judgment (Doc. No. 217) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 10th day of February, 2025.

ALISTAIR E. NEWBERN
United States Magistrate Judge