# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

MARIO BOWLES,           )
                             )
       Plaintiff,        )
                             )
v.                         )     No. 3:22-cv-00032
                             )
TENNESSEE DEPARTMENT OF      )
CORRECTION, et al.,          )
                             )
       Defendants.     )

## MEMORANDUM OPINION

Before the Court are various objections to two of the Magistrate Judge's Reports and Recommendations. The Magistrate Judge's first February 10, 2025 Report and Recommendation ("First R&R") recommends that the Court dismiss Plaintiff Mario Bowles's ("Bowles") claims against Defendants Nakynia Jackson ("Jackson") and Jeree Harris ("Harris") without prejudice under Federal Rule of Civil Procedure 4(m) for Bowles's failure to effect service of process. (Doc. No. 253). The Magistrate Judge's second February 10, 2025 Report and Recommendation ("Second R&R") (collectively with First R&R, "R&Rs") recommends that the Court: grant in part and deny in part Defendants CoreCivic, Inc. ("CoreCivic"), Captain Samuel Beaver ("Beaver"), Lieutenant Edmond Hill ("Hill"), Captain Victor Huddleston ("Huddleston"), Case Manager Carolyn Matthews ("Matthews"), Capitan Kyla Mitchell ("Mitchell"), Officer Andrea Moore ("Moore"), Lieutenant Craig Murray ("Murray"), Officer Marlon Rowe ("Rowe"), and Case Manager Chevone Smith's ("Smith") (collectively, "CoreCivic Defendants") motion for summary judgment (Doc. No. 204); grant Defendant Contract Monitor Christoper Brun's ("Brun") motion for summary judgment (Doc. No. 246); deny Bowles's motion for summary judgment (Doc. No. 217); deny the parties' motions to quash and strike (Doc. Nos. 222, 235, 239, 249); and construe

Bowles's motion to deny Defendants' motions to strike his statement of undisputed material facts (Doc. No. 242) as his response in opposition to those motions. (Doc. No. 254). Bowles has filed objections to both R&Rs. (Doc. Nos. 265, 266). All of the CoreCivic Defendants except Moore responded to Bowles's objections to the Second R&R. (Doc. No. 267). Moore has filed objections to the Second R&R (Doc. No. 257), to which Bowles responded (Doc. No. 268).[1] For the following reasons, the Court will overrule Bowles's and Moore's objections (Doc. Nos. 257, 265, 266) and will approve and adopt the R&Rs.

## I.    BACKGROUND[2]

The Court assumes the parties' familiarity with the events underlying the instant case, and will only address them to the extent necessary to resolve the pending objections. As explained in the thorough R&Rs, this dispute arises from Bowles's alleged mistreatment at two Tennessee Department of Correction ("TDOC") facilities: Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee, and Whiteville Correctional Facility ("WCFA") in Whiteville, Tennessee. (Doc. Nos. 13, 16).[3] Bowles alleges Defendants repeatedly violated his First and Eighth Amendment rights at TTCC, while being transferred from TTCC to WCFA, and at WCFA. Like in the Second R&R, the Court will address each set of allegations separately.

---

[1] Bowles's filing is described as an "Objection to [] Moore's Objection on Report and Recommendation of the Magistrate Judge." (Doc. No. 268). The Court construes Bowles's filing as a response to Moore's objections and will treat it as such.

[2] Given Bowles does not dispute the facts regarding his failure to serve Jackson and Harris as related to the First R&R, Bowles's allegations against Jackson and Harris, and the details of his failures to serve them, will not be included in this opinion. (See Doc. Nos. 253, 254).

[3] As the Magistrate Judge explained in the Second R&R, the Court considers the Amended Complaint (Doc. No. 13) and Second Amended Complaint (Doc. No. 16) together as the Complaint. (Doc. No. 254 at 10 n.3; see Doc. No. 36 at 1 n.1). Like the Magistrate Judge did in the Second R&R, the Court will include some of Bowles's unverified allegations in the Complaint to provide relevant context on the evidence in the record and the parties' objections but will not take them as proper evidence supporting Bowles's claims. (See id. at 2 n.1).

1. <u>TTCC</u>

Bowles alleges that Defendants committed multiple Eighth Amendment violations against him at TTCC. (Doc. No. 16). According to Bowles, he arrived at TTCC on April 9, 2021. (<u>Id.</u>). Upon his arrival, Bowles refused to be transferred to its main compound because other inmates had mistaken him for a gang member who cooperated with law enforcement, making him fearful for his safety. (<u>Id.</u>). Bowles alleges that on May 21, 2021, because he feared for his safety in the main compound, he refused Jackson's request that he go there. (<u>Id.</u>). In response to Bowles's refusal, Bowles contends that Hill, Murray, Rowe and Moore handcuffed him and took him to a housing unit in the main compound. (<u>Id.</u>). Bowles alleges that, while in the housing unit in the main compound, 25 gang members then came to his cell to kill him, until another inmate informed them that he was not the person they were looking for. (<u>Id.</u>). Following this incident, Bowles states he was returned to a cell outside the main compound. (<u>Id.</u>). In contrast, Hill, Murray, and Rowe all state in sworn declarations that they do not remember escorting Bowles to the main compound. (Doc. Nos. 208, 213, 214).

Bowles alleges that separate incidents occurred between him and Hill, Beaver, and Brun in July and August 2021 at TTCC. (Doc. No. 16). Bowles alleges that in July and August 2021, Hill choked and slammed him on the floor of his cell, among other things, causing him to suffer various injuries. (Doc. No. 16). Bowles further alleges that Beaver and Brun watched Hill harm Bowles in August 2021, yet did nothing to stop Hill and refused to get Bowles medical attention. (<u>Id.</u>). Hill, Beaver, and Brun all dispute these allegations in sworn declarations. Hill states that he never used force against Bowles in July 2021. (Doc. No. 208 ¶ 8). He also declares that in August 2021 he only "used balance displacement techniques to place Bowles on the ground" to "restore order, and gain control of the situation" after Bowles "became combative, "continued to pull away" from him, and was "repeated[ly] defiant" in doing a cell transfer. (<u>Id.</u> ¶¶ 10–15). Beaver confirms Hill's

3

recollection of the August 2021 events in his declaration, stating that Hill "used balance displacement techniques to place [] Bowles [] on the ground following Bowles's refusal to submit to a cell transfer." (Doc. No. 207 ¶ 3). Beaver further states that Bowles was evaluated by medical staff following the incident, and "did not suffer any injuries as a result of Hill's conduct." (Id. 7–9). Brun states in his own declaration that he was not present for the August 2021 events in question, never witnesses Hill use force against Bowles, and Bowles did not request access to medical treatment from Brun in connection with the alleged incident. (Doc. No. 247-1 ¶¶ 7–9).

### 2. Transfer From TTCC to WCFA

Bowles also alleges Defendant committed multiple First and Eighth Amendment violations against him during his transfer from TTCC to WCFA. Bowles alleges that on February 1, 2022, Mitchell, Smith, and Matthews, among others, told Bowles he was being transferred to WCFA in retaliation for Bowles filing the instant suit the month before. (Doc. No. 16). Bowles further alleges that he refused the transfer because he felt it was dangerous for him to go to WCFA. (Id.). Nevertheless, Bowles asserts Mitchell, Smith, and Matthews sprayed him with mace, pushed and punched him, and dragged him on the bus to be taken to WCFA, causing him various injuries. (Id.). He also alleges that when Brun arrived on the scene, he approved Bowles's transfer to WCFA and failed to obtain medical treatment for Bowles for his injuries. (Id.).

Mitchell, Smith, Matthews and Brun provide evidence to the contrary. (Doc. No. 206 ¶ 15; Doc. No. 247-1 ¶ 10). Smith declares that he was not at work the day of the events in question "[d]ue to COVID-19" and was "therefore not [] involved in any use of force against [] Bowles [] during his transfer" to WFCA. (Doc. No. 215 ¶¶ 3–4). Matthews and Mitchell confirm that they did assist with Bowles's transfer to WCFA, but both deny ever using force against him during the course of the transfer. (Doc. No. 211 ¶ 3; Doc. No. 212 ¶ 3). However, Mitchell states in his declaration that prior to Bowles's transfer, Bowles repeatedly refused Mitchell's order to submit

4

to hand restraints in the food port of his cell. (Doc. No. 212 ¶ 4). Given this, Matthews and Mitchell state that their colleague Laroderick McDavid, Jr. ("McDavid") received permission to, and subsequently did, spray chemical agents into Bowles's cell. (Doc. No. 211 ¶ 5; Doc. No. 212 ¶ 6). According to Matthews and Mitchell, after McDavid sprayed the chemical agent into Bowles's cell, Bowles complied with Mitchell's orders to submit to hand restraints, and was escorted to the transport bus without further incident. (Doc. No. 211 ¶ 8; Doc. No. 212 ¶ 10). As to Brun's alleged involvement in the incident in question, Brun declares that he "was not present for the February 1, 2022, cell extraction and movement of [] Bowles" and "was also not present for the transfer of [] Bowles and did not enter the transport vehicle at any time." (Doc. No. 247-1 ¶ 10). Brun further declares that he did not have contact with Bowles that day or in any way regarding Bowles's transfer to WCFA. (Id.).

     3.  <u>WCFA</u>

Finally, Bowles asserts Defendants committed Eighth Amendment violations against him during his time at WCFA. Bowles alleges that at WCFA, Huddleston, Rowe and Lieutenant Warren forced him to share a cell with inmates he had conflicts with by threatening Bowles with mace if he did not comply. (Doc. No. 16). Bowles alleges that on one occasion on April 12, 2022, Lieutenant Warren threatened to mace him if he did not let a gang-affiliated inmate into his cell, causing Bowles to have a panic attack stemming from his post-traumatic stress disorder ("PTSD"). (Id.). Bowles asserts that he told Rowe about his PTSD and asked for mental health treatment, but Rowe laughed and denied his request until Bowles threatened to harm himself. (Id.).

Rowe provides a declaration calling these allegations into question. Rowe states in his declaration that he does "not remember the April 12, 2022 incident that Bowles describes through this lawsuit." (Doc. No. 214 ¶ 8). Regardless, Rowe asserts that he would not mock Bowles if he stated he was going to "blank out on PTSD." (Id.). He further declares that he takes such

5

allegations seriously and, if confronted with a situation of that nature, he would have contacted his supervisor and mental health services. (Id. ¶ 9). Rowe also states that, "[a]s part of this process, [he] also would have ensured that a correctional officer or other individual was stationed in front of Bowles'[s] cell to monitor Bowles until mental health services arrived." (Id. ¶ 10).

Separately, Bowles alleges that on July 6, 2022, Huddleston used physical force and mace on him after Bowles initially refused one of Huddleston's orders. (Doc. No. 16). Bowles contends that after Huddleston's use of force, Huddleston left Bowles in a segregation cell with his skin burning for hours. (Id.). Again, Huddleston presents evidence rebutting these assertions. Huddleston declares that, on July 6, 2022, he went to transfer Bowles to a restrictive housing unit so Bowles could see a doctor. (Doc. No. 209 ¶¶ 3–4). Huddleston declares that when he first attempted to escort Bowles, Bowles "became combative and refused to submit to restraints, despite repeated orders for him to do so." (Id. ¶ 5). In response, Huddleston obtained permission to spray chemical agents into Bowles's cell, and then did so after Bowles again refused to submit to restraints. (Id. ¶¶ 6–8). Huddleston states that absent his use of chemical agents in Bowles's cell, he did not "otherwise use force against Bowles" and "did not intend to cause Bowles harm through force . . . beyond what was necessary to achieve compliance and restore order." (Id. ¶¶ 8, 10).

### 4. Bowles's Attempts at Redress

From January 2021 to April 2022, Bowles filed various grievances at TDOC institutions, including three grievances mentioning the alleged August 2021 incident. (Doc. No. 247-2; Doc. No. 247-3 ¶ 15 ("Bowles filed three (3) grievances mentioning the August [2021] incident" on August 20, 2021, December 1, 2021, and January 25, 2022), Ex. C, Ex. D).

However, Cynthia Christian ("Christian"), the grievance chairperson at TTCC (Doc. No. 247-3 ¶ 2), states that none of the grievances in Bowles's log pertain to the allegations he brings in this suit against Brun. (Id. ¶ 14). Similarly, Ashley Wilkes ("Wilkes"), the grievance

6

chairperson at WCFA (Doc. No. 247-2 ¶ 2), states that Bowles did not complain in any of his grievances about his transfer to WCFA in February 2022; that any CoreCivic staff members failed to timely provide him with mental health treatment in April 2022; or that any CoreCivic staff members used excessive force on him in July 2022. (Doc. No. 216 ¶¶ 10–13; Doc. No. 247-2 ¶¶ 14, 17–18).

5. The R&Rs

In response to the foregoing events, Bowles brought First and Eighth Amendment claims against the CoreCivic Defendants and Brun, alleging they retaliated against him, used force against him, failed to protect him, and were deliberately indifferent to his serious medical needs. (Doc. Nos. 13, 16). After filing suit, the Marshals Service made various attempts to serve Jackson and Harris on Bowles's behalf, but were unable to successfully do so. (Doc. No. 253 at 2–3). Given this, on July 30, 2024, the Magistrate Judge ordered Bowles to show cause by August 19, 2024 on "why the Magistrate Judge should not recommend that the Court dismiss his claims against Jackson and Harris under Rule 4(m) for failure to effect timely service of process." (Doc. No. 229 at 5). Bowles responded to the Magistrate Judge's show-cause order on August 16, 2024. (Doc. No. 232). Meanwhile, the CoreCivic Defendants, Brun, and Bowles all filed cross-motions for summary judgment. (Doc. Nos. 204, 217, 246). The parties then filed various motions to quash and strike portions of the opposing parties' briefing, and Bowles filed a response thereto.[4] (Doc.

---

[4] No party has objected to the Second R&R's recommendations on the parties' motions to quash and strike. (Doc. No. 254 at 17–19; see Doc. Nos. 258, 265, 266). Having thoroughly reviewed the Second R&R, the Court agrees with the Magistrate Judge's analysis on these pending motions. Specifically, the Court agrees that Rule 12(f) is not an appropriate vehicle for the parties' motions, and the Magistrate Judge was well within her discretion to decline to quash or strike the parties' summary judgment materials. (Doc. No. 254 at 17–19). Accordingly, the Second R&R will be approved and adopted; the parties' motions (Doc. Nos. 222, 235, 239, 249) will be denied; and Bowles's motion to deny the defendants' motions to strike (Doc. No. 242) will be construed as a response in opposition to those motions. (See Doc. No. 254 at 40).

7

Nos. 222, 235, 239, 242).

On February 10, 2025, the Magistrate Judge issued the instant R&Rs resolving these matters. (Doc. Nos. 253, 254). In the First R&R, the Magistrate Judge recommended that the Court dismiss Bowles's claims against Jackson and Harris without prejudice under Federal Rule of Civil Procedure 4(m) for Bowles's failure to effect service of process. (Doc. No. 253). In the Second R&R, the Magistrate Judge recommended that the Court:

> (1) grant the CoreCivic Defendants' motion (Doc. No. 204) on Bowles's Eighth Amendment excessive force and First Amendment retaliation claims against Matthews, Mitchell and Smith; his Eighth Amendment deliberate indifference claims against CoreCivic and Rowe; and his Eighth Amendment excessive force claim against Huddleston; and his Eighth Amendment failure to protect and deliberate indifference claims and First Amendment retaliation claim against Brun for Bowles's failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") (Doc. No. 254 at 24–29);

> (2) grant the CoreCivic Defendants' motion on Bowles's Eight Amendment excessive force and failure to protect claims and First Amendment retaliation claims against Hill, Murray, and Rowe and Bowles's Eighth Amendment failure to protect and deliberate indifference claims against Beaver because Bowles failed to create a genuine dispute of material fact as to those claims (id. at 29–39);

> (3) deny the CoreCivic Defendants' motion on Bowles's remaining Eighth Amendment claim against Moore because Moore failed to carry her burden of demonstrating any record evidence "showing Moore's subjective knowledge of the alleged danger to Bowles on the TTCC main compound" and failed to establish she was entitled to summary judgment as a matter of law (id. at 34, 35 n.9);

> (4) deny Bowles's motion because he did not provide evidence from which the Court could find that he established no genuine dispute of material fact as to any of his claims (id. at 40); and

> (5) deny the parties' motions to quash and strike, given the motions inappropriately rely on Rule 12(f) (id. at 17–19).

Moore and Bowles have filed various objections to the R&Rs (Doc. Nos. 258, 265, 266), which the Court will respond to in turn.

## II.    STANDARD OF REVIEW

All of Moore's and Bowles's objections to the R&Rs pertain to dispositive issues. (see Doc. Nos. 258, 265, 266). See Fed. R. Civ. P. 4(m) (if a defendant is not served with process

8

within 90 days of the filing of the complaint, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant"); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); Cellar Door Productions, Inc. of Michigan v. Kay, 897 F.2d 1375, 1378 (6th Cir. 1990) (summary judgment motions are dispositive).  Given this, pursuant to Rule 72(b), the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

Importantly, "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." VanDriver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004) (quotation and citations omitted).  Indeed, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."  Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001).  Further, arguments raised for the first time to the district court on objection are not normally properly before the district court for consideration, as arguments are usually waived when not first presented to the magistrate judge.  See Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (party procedurally barred from raising claim not raised before the magistrate judge); The Glidden Co. v. Kinsella, 386 F. App'x. 535, 544 (6th Cir. 2010) (declining to review an issue that the district judge did not consider because it was not presented to the magistrate judge).  Whether objections are properly raised is of great import, as improper objections amount to a "failure to properly, specifically, and timely object to a report and recommendation," which "releases the Court from its duty to independently review the matter."  Lawhorn v. Buy Buy Baby, Inc., 2021 WL 1063075,

9

at *1 (M.D. Tenn. Mar. 19, 2021).  This is because without proper objections to a R&R, the "functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks." <u>Howard v. Sec'y of Health & Hum. Servs.</u>, 932 F.2d 505, 509 (6th Cir. 1991).

## III.  DISCUSSION

Before the Court are three sets of objections to the R&Rs: (1) Bowles's objections to the First R&R (Doc. No. 265); (2) Bowles's objections to the Second R&R (Doc. No. 266); and (3) Moore's objections to the Second R&R (Doc. No. 257).  The Court will address each set of objections separately.

### 1.  Bowles's Objections to the First R&R

Bowles's first set of objections (Doc. No. 265) relates to the Magistrate Judge's recommendation in the First R&R that the Court dismiss Jackson and Harris from this case pursuant to Rule 4(m) due to Bowles's failure to timely serve them.  (Doc. Nos. 253, 265).  The Court interprets Bowles to raise four objections to the First R&R: (1) the Court should assist Bowles in preserving his constitutional rights and not prejudice him for the failure to serve Jackson and Harris; (2) the requirements of Bowles's § 1983 Eighth Amendment failure-to-protect claims against Jackson and Harris are satisfied; (3) Bowles satisfied his showing of good cause for why his claims against them should not be dismissed in his response to the Magistrate Judge's prior show-cause order; and (4) even if Bowles has not established good cause for extension of the time to permit late service to Jackson and Harris, the circumstances warrant further extension of time for service.  (Doc. No. 265).  None of Bowles's objections are successful.

As an initial matter, none of Bowles's objections are properly before this Court.  All four of Bowles's objections fail to specifically identify a portion of the First R&R that Bowles takes issue with.  (Doc. No. 265).  Instead, Bowles's objections amount to "general objection[s] to the

10

entirety of the magistrate's report[,]" which "ha[ve] the same effects as would a failure to object." Howard, 932 F.2d at 509; see Zimmerman v. Cason, 354 F. App'x 228, 230 (6th Cir. 2009) (same). Bowles's first, second, and third objections to the First R&R fail for an additional reason: they all amount to the same arguments Bowles raised before the Magistrate Judge in his response to the Magistrate Judge's show-cause order. (See Doc. Nos. 232, 265). There, Bowles argued that his claims against Jackson and Harris should not be dismissed under Rule 4(m) by explaining § 1983 law, his allegations against Jackson and Harris, asserting that Harris was evading service, and arguing that judgment on his claims against Jackson and Harris should be in his favor. (Doc. No. 232). The Magistrate Judge directly considered and rejected these arguments in finding that dismissal was warranted. (Doc. No. 253 at 4, 8). Given this, Bowles's invocation of the same arguments in objecting to the First R&R are improper, as restated arguments raised as purported objections to a magistrate judge's recommendation are not truly objections at all. VanDriver, 304 F. Supp. 2d at 938; see also Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge."). Because the Magistrate Judge has already addressed the substance of Bowles's first three objections in the First R&R, the Court will not repeat her efforts by conducting a complete *de novo* review of each argument here. (See Doc. No. 253). Even if the Court did so, it would conclude that the Magistrate Judge's analyses and conclusions are without error. (See id.). Accordingly, Bowles's first, second, and third objections will be overruled.

Aside from it being improperly general, Bowles's fourth objection fails for an additional reason: it was not raised before the Magistrate Judge in response to her show-cause order for the Magistrate Judge's consideration in the first instance. Murr, 200 F.3d at 902 n.1; see Kinsella, 386

F. App'x at 544 (declining review of issue not considered by district court because it was not presented to the magistrate judge). Nevertheless, there are two good reasons to consider Bowles's belated arguments in his first objection anyway. First, the Magistrate Judge has recommended *sua sponte* dismissal of Bowles's claims against Jackson and Harris, partially excusing Bowles's failure to explain why he should get more time to serve Jackson and Harris even without a showing of just cause before now. See Moore v. Prevo, 379 F. App'x 425, 428 n.6 (6th Cir. 2010) (declining to apply the general rule that issues raised for the first time in objections to the magistrate judge's report be deemed waived where the magistrate judge *sua sponte* recommended dismissal of the plaintiff's case). Second, courts give *pro se* litigants like Bowles considerable latitude, suggesting it is best for this Court to fully address Bowles's fourth objection on the merits in the interest of justice. United States v. Willis, 804 F.2d 961, 963 (6th Cir. 1986); Kelly v. Withrow, 25 F.3d 363, 366 (6th Cir. 1994) ("The requirement for specific objections to a magistrate judge's report is not jurisdictional and a failure to comply may be excused in the interest of justice."). With these considerations in mind, the Court will conduct a *de novo* review of Bowles's first objection.

Reading Bowles's fourth objection generously, the Court interprets Bowles to argue that an extension for the time for service of process under Rule 4(m) is appropriate because, even absent a showing of just cause, the Oakland Physicians factors weigh in favor of extension. (Doc. No. 265 at 2). Rule 4(m) of the Federal Rules of Civil Procedure "sets forth the timeline for effecting service of process, as well as the scenarios that warrant enlarging that timeframe." United States v. Oakland Physicians Med. Ctr., LLC, 44 F.4th 565, 568 (6th Cir. 2022). Rule 4(m) states, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must

12

extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "If a plaintiff demonstrates good cause for the failure to timely serve process, the court must extend the time for service." Oakland Physicians, 44 F.4th at 568 (citing Fed. R. Civ. P. 4(m)). Here, the Court agrees with the Magistrate Judge's determination that Bowles's allegations against Jackson and Harris, and his arguments for extension of service, do not amount to a showing of good cause such that a further extension of time for Bowles to serve Jackson and Harris under Rule 4(m) is warranted. (Doc. Nos. 232, 253).

Under these circumstances, where the plaintiff fails to establish good cause for an extension under Rule 4(m), "the court retains discretion as to whether or not to enlarge that timeframe" for service. Oakland Physicians, 44 F.4th at 568 (citing Henderson v. United States, 517 U.S. 654, 662 (1996)). In deciding whether to enlarge the timeframe for service absent a showing of just cause to do so, the Sixth Circuit instructs district courts to "consider the following factors":

> (1) whether an extension of time would be well beyond the timely service of process;
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
> (3) whether the defendant had actual notice of the lawsuit;
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

Id. at 569. Bowles asserts the third, fourth, fifth, sixth, and seventh factors weigh in his favor, given: Jackson and Harris had notice of the lawsuit but evaded service; Bowles would be prejudiced without an extension; he has made good faith efforts to effectuate service despite being in segregation and restricted housing; he is proceeding *pro se*; and there are extreme factors here

13

that make it a unique case that warrants more time for service. (Doc. No. 265 at 2). Setting aside that many of these arguments are refashioned from those already raised in Bowles's response to the Magistrate Judge's show-cause order (see Doc. No. 232), the Court agrees with the Magistrate Judge's determination that these factors weigh against further extension. (See Doc. No. 253).

The Court agrees with Bowles and the Magistrate Judge that the fourth factor weighs in favor of extension, as Bowles is prejudiced by the Court declining further extensions because his claims will likely be time-barred if raised in the future. (See Doc. No. 253 at 8). However, the Court finds none of the other factors Bowles argues warrant extension are in his favor. The Court joins the Magistrate Judge's conclusion that the fifth and sixth factors—whether Bowles has made good faith efforts to effectuate service and whether Bowles is a *pro se* litigant deserving of latitude—are "effectively neutral." (Doc. No. 253 at 9). As the First R&R explains, on the fifth factor, Bowles made good faith efforts to return completed service packets for Jackson and Harris, and provided their former work addresses for service. (Id.). However, he has not diligently tried to identify current addresses for either defendant, despite having copious amounts of time to do so. (Id.). Further, as to the sixth factor, the Court has afforded *ample* time to account for Bowles's *pro se* status—at the time of the First R&R, more than 750 days from when the Court screened the Complaint—to afford him the opportunity to effectuate service. (See Doc. Nos. 13, 16). Given the generous extension the Court has already given Bowles to serve Jackson and Harris, it agrees with the Magistrate Judge that the Court has more than accounted for his *pro se* status, and there is no indication that additional time would allow him to serve Jackson and Harris. (Doc. No. 253 at 9).

The Court also agrees with the First R&R's conclusion that the first, third, and seventh factors weigh against further extension. (Id.). On the first factor, whether an extension would be

14

well beyond the timely service of process, another extension would go significantly beyond the 90-day period for service under Rule 4(m), as more than two years have passed from the Court's screening of the Complaint. (Id.; see Doc. Nos. 13, 16). On the third factor, whether Jackson and Harris have actual notice of the lawsuit, Bowles contends both defendants know of the lawsuit and have been evading service. (Doc. No. 265 at 2). However, as was the case with Bowles's response to the show-cause order (Doc. No. 232), Bowles fails to present evidence here supporting this assertion. (See Doc. No. 265). Nor can the Court find any evidence demonstrating Jackson or Harris are attempting to evade service, even on its own independent review of the record. On the seventh factor, whether any equitable factors exist that are relevant to the unique nature of the case, Bowles's blanket assertion that these factors exist is not enough to find this factor is in favor of extension. (Doc. No. 265 at 2). And the Court cannot identify any unique factors pertaining to Bowles's case that warrant extension beyond the more than 750 days the Court already allowed for service. (See Doc. No. 253 at 9).

Weighing these factors together, the Court agrees with the Magistrate Judge's determination in the First R&R that the weight of the Oakland Physicians factors instructs that no further extension for Bowles to serve Jackson and Harris is appropriate. Accordingly, the Bowles's first objection will be overruled. The Court will approve and adopt the First R&R, and the claims against Jackson and Harris will be dismissed without prejudice.

### 2. Bowles's Objections to the Second R&R

The Court turns to Bowles's objections the Second R&R. In the Second R&R, the Magistrate Judge recommends that the Court grant summary judgment in many of the Defendants' favors on most of Bowles's First and Eighth Amendment claims and deny Bowles's motion for summary judgment on all of his claims. (Doc. No. 254). The Court interprets Bowles as raising three objections to the Second R&R, arguing: (1) contrary to what is stated in the Second R&R,

15

Bowles signed his "original application" (Doc. No. 1) and "amended petition" (Doc. Nos. 13, 16) under penalty of perjury, as well as affidavits in support of his claims (Doc. Nos. 113, 114); (2) not only do § 1983 claims not require PLRA exhaustion, but Bowles tried to comply despite Defendants preventing him from doing so; and (3) Bowles did, in fact, show that he is entitled to judgment on his claims under Rule 56, including through his sworn statements, affidavits, and cited evidence. (Doc. No. 266).

As with Bowles's objections to the First R&R, Bowles's objections to the Second R&R suffer from various procedural flaws that render all of them improperly raised. Each of the three objections Bowles raises on the Second R&R fail to specifically describe how the Magistrate Judge erred in her recommendations, effectively amounting to various general objections with the Second R&R's outcome. (Doc. No. 266). As with Bowles's general objections to the First R&R, see supra, Section III.1, Bowles's generalized objections to the Second R&R are not proper objections for the Court's consideration at all. Howard, 932 F.2d at 509; Zimmerman, 354 F. App'x at 230. Further, Bowles's second and third objections are the same arguments Bowles raised during summary judgment briefing that the Magistrate Judge considered and rejected. (See Doc. No. 221 ¶ 2 (Bowles arguing in response to the CoreCivic Defendants' motion that exhaustion is not necessary under § 1983, but that he filed grievances anyway); Doc. No. 217 (Bowles's affirmative motion for summary judgment); Doc. No. 233 (Bowles's "statement of undisputed material facts" arguing for summary judgment in his favor); Doc. No. 254 at 24, 39–40 (Magistrate Judge considering and rejecting Bowles's arguments)). These repeated "objections" in the form of restated arguments that were already considered by the Magistrate Judge need not be addressed again by this Court. VanDriver, 304 F. Supp. 2d at 938; Aldrich, 327 F. Supp. 2d at 747. Still, Bowles's *pro se* status, and the number of claims that will be adjudged in Defendants' favor if the

16

Court approves and adopts the Second R&R, dictate that justice requires this Court to fully consider Bowles's flawed objections on the merits. Kelly, 25 F.3d at 366. The Court will conduct a *de novo* review of each objection in turn.

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (internal citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (internal citation and quotation marks omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. See Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment;

rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. See Rodgers, 344 F.3d at 595.

## A. Bowles's First Objection to the Second R&R

Bowles's first objection—amounting to an assertion that the Magistrate Judge was incorrect that Bowles did not verify the Complaint, or properly consider his affidavits—is wrong. (Doc. No. 266 at 1). Under 28 U.S.C. § 1746, an item is not signed under penalty of perjury unless it states the following, in pertinent part:

> If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746(2). These requirements are "exacting." Kavanaugh v. Lexington Fayette Urb. Cnty. Gov't, 638 F. App'x 446, 453 n.4 (6th Cir. 2015). If not satisfied, the "'mere allegations or denials' in unverified pleadings" do not constitute evidence for the purposes of summary judgment. King v. Harwood, 852 F.3d 568, 578 (6th Cir. 2017) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 385 (6th Cir. 1999) (en banc)); see Sweeting v. Schweigtzer, 2020 WL 5822513, at *2 (6th Cir. July 31, 2020) (finding plaintiff could not rely on allegations not submitted under penalty of perjury to avoid summary judgment in the defendant's favor).

True, Bowles verified his original petition under penalty of perjury in compliance with 28 U.S.C. § 1746. (Doc. No. 1 at 8). However, the Magistrate Judge is correct that Bowles did not sign the operative document, the Complaint, under penalty of perjury as defined in § 1746. (See Doc. Nos. 13, 16 (devoid of the required language in § 1746)). Unfortunately for Bowles, his failure to certify his Complaint under penalty of perjury is not saved by his compliance with § 1746 in the original petition, given his Complaint "supersedes [his] earlier complaint for all purposes." Calhoun v. Bergh, 769 F.3d 409, 410 (6th Cir. 2014); see In re Refrigerant Compressions Antitrust Lit., 731 F.3d 586, 589 (6th Cir. 2013) (same). Given this, the Second

18

R&R properly declined Bowles's request to use his allegations in the Complaint as evidence in resolving the underlying motions for summary judgment. See Anderson, 477 U.S. at 248; Sweeting, 2020 WL 5822513, at *2.

Bowles's argument that he filed affidavits sworn under penalty of perjury in support of the "malicious official misconduct of the Defendants" is no more successful. (Doc. No. 266 at 1). Setting aside that Bowles does not describe how his purported affidavits suggest error in the Second R&R, Bowles's reliance on these sources suffers from the same flaw as his reliance on the Complaint. As with the Complaint, neither purported affidavit, while both "sworn" as "true" by Bowles, complies with the exacting standard set forth under 28 U.S.C. § 1746. (See Doc. Nos. 113, 114 (not including the language required under § 1746)). Because Bowles did not sign either affidavit under penalty of perjury, these documents also do not constitute evidence for the purposes of summary judgment. King, 852 F.3d at 578; Sweeting, 2020 WL 5822513, at *2. Accordingly, Bowles's first objection to the Second R&R will be overruled.

## B. Bowles's Second Objection to the Second R&R

Bowles's second objection raises various issues with the Magistrate Judge's recommendation that Defendants' summary judgment motions be granted, in part, because Bowles failed to exhaust his administrative remedies under the PLRA. In support, Bowles contends: (1) his § 1983 claims do not require administrative exhaustion prior to filing; (2) he has satisfied exhaustion of his administrative remedies; and (3) even if he has not, it is because Defendants made those remedies unavailable to him. (Doc. No. 266 at 2). Reading Bowles's objections liberally, the Court takes him to argue that the Magistrate Judge erred in three ways: (1) agreeing with Defendants that Bowles was required to comply with PLRA exhaustion requirements prior to filing his § 1983 claims; (2) finding Bowles did not comply with PLRA exhaustion requirements; and (3) finding Defendants did not prevent Bowles from using the administrative procedures.

19

(Id.).  The CoreCivic Defendants counter that Bowles's arguments are both legally and factually incorrect, as the law does require Bowles to administratively exhaust his claims, and he has failed to provide evidence showing he has complied with administrative exhaustion for a subset of his claims.  (Doc. No. 267 at 6).

The Court agrees with the CoreCivic Defendants and is unpersuaded by Bowles's arguments on his second objection.  Ignoring that Bowles brought the exact arguments he raises here before the Magistrate Judge, which she rejected (see, e.g., Doc. No. 254 at 24), the Court finds that the Magistrate Judge properly identified and applied the correct law in finding summary judgment appropriate in Matthews's, Mitchell's, Smith's, CoreCivic's, Rowe's, and Brun's favor because of Bowles's failure to exhaust the administrative remedies for a subset of his First and Eighth Amendment claims against them.  (See Doc. No. 254 at 19–29).  No argument Bowles raises alters this conclusion.

As the Second R&R accurately states in more thorough detail, "[u]nder the PLRA, a prisoner may not sue to vindicate his constitutional rights under 42 U.S.C. § 1983 unless he has first exhausted the administrative remedies available to him."  Richards v. Perttu, 96 F.4th 911, 916 (6th Cir. 2024) (citing 42 U.S.C. § 1997e(a)); see Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  "This requirement is a strong one."  Napier v. Laurel County, 636 F.3d 218, 222 (6th Cir. 2011).  It requires "proper exhaustion," which "'means using all steps that the agency holds out, and doing so *properly*.'"  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Still, the requirement is not absolute.  Does 8–10 v. Snyder, 945 F.3d 951, 962 (6th Cir. 2019).  Under the PLRA, "the exhaustion requirement hinges on the 'availab[ility]' of

20

administrative remedies: [a]n inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  Ross v. Blake, 578 U.S. 632, 642 (2016).  An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'"  Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).  By contrast, "[i]n rare circumstances where prison officials are unable or are consistently unwilling to provide relief, administrative schemes are 'so opaque that [they] become[ ], practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation,' the courts will consider administrative remedies unavailable and allow otherwise unexhausted claims to proceed."  Richards, 96 F.4th at 917 (quoting Ross, 578 U.S. at 643–44).  The Sixth Circuit requires an inmate to make "some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable."  Napier v. Laurel Cnty., 636 F.3d 218, 223 (6th Cir. 2011) (quotations and citation omitted).

Because Huddleston, Matthews, Mitchell, Rowe, Smith, CoreCivic, and Brun bear the burden of persuasion on whether Bowles exhausted his administrative remedies at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  Cockrel v. Shelby Cnty. Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001) (quotation and citation omitted).  Given this, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion."  Risher v. Lappin, 639 F.3d 236, 240 (6th Cir. 2011).

As a threshold matter, the Court finds that the administrative exhaustion requirement set forth in the PLRA undoubtedly applies to Bowles's First and Eighth Amendment claims against

Defendants. Indeed, there is ample Sixth Circuit precedent demonstrating this question is beyond debate. Jones, 549 U.S. at 211; Richards, 96 F.4th at 916; see Napier, 636 F.3d at 222–25 (applying PLRA exhaustion requirement to prisoner's Eighth Amendment claims); Reed-Bey v. Pramstaller, 603 F.3d 322, 324–26 (6th Cir. 2010) (same); Bell v. Konteh, 450 F.3d 651, 653 (6th Cir. 2006) (same); Burton v. Jones, 321 F.3d 569, 577 (6th Cir. 2003), abrogated on other grounds by Jones, 549 U.S. 199 (applying PLRA exhaustion requirement to a prisoner's First Amendment retaliation claims); see also Heard v. Strange, 127 F.4th 630, 634–35 (6th Cir. 2025) (contemplating state tolling statute with the PLRA exhaustion requirement in relation to a prisoner's First Amendment retaliation claim).

As the Magistrate Judge aptly explained in the Second R&R, Bowles's reliance on Damico does not alter this conclusion. (Doc. No. 254 at 24). In Damico, the Supreme Court held that relief sought under the Civil Rights Act of 1964 could not be defeated "because relief was not first sought under state law which provided (an administrative) remedy." Damico, 389 U.S. at 417 (citation omitted). Bowles's reliance on this proposition to suggest that the PLRA exhaustion requirement does not apply to his claims is flawed, given Damico contemplated *state* law requirements that were in excess of those provided by federal law, and the Civil Rights Act was intended to be "supplementary to any remedy any State might have." Id. Further, as the Magistrate Judge correctly points out, Damico is of little import here because it was decided decades prior to the enactment of the PLRA, and the plaintiffs in Damico were not incarcerated and therefore had no institutional grievance procedure to exhaust. (Doc. No. 254 at 24). The context Damico was decided under is far different from the instant case, where exhaustion is required under a *federal* law, and Bowles points to no authority suggesting that § 1983 claims were intended to be exempt from that requirement. In fact, the extensive Sixth Circuit precedent cited by the Court applying

22

the PLRA exhaustion requirement to § 1983 claims after <u>Damico</u> was decided demonstrates that <u>Damico</u> is not a hindrance to applying PLRA exhaustion here.

Given PLRA exhaustion applies to Bowles's claims, the Court must next determine whether there is any genuine dispute of material fact on whether Bowles properly attempted to comply with those procedures. To determine whether Bowles exhausted his administrative remedies under the PLRA, courts look to whether the plaintiff "complete[d] the administrative review process in accordance with the applicable procedural rules." <u>Woodford</u>, 548 U.S. at 88. The applicable procedural rules are "defined not by the PLRA, but by the prison grievance process itself." <u>Jones</u>, 549 U.S. at 218. The CoreCivic Defendants and Brun have presented evidence describing the TTCC's and WCFA's three-level grievance procedure employed in accordance with TDOC Policy 501.01.[5] (Doc. Nos. 216, 216-1, 247-2). Because the applicability of the three-level grievance procedure is not in dispute, the Court will reference that procedure in evaluating Bowles's remaining arguments on this objection.

The Court starts with Bowles's argument that he attempted to properly comply with the grievance procedure. Although Bowles asserts in his summary judgment briefing that he made various grievances on the claims at issue, (<u>see, e.g.</u>, Doc. No. 221 ¶ 2), all of the evidence in the record demonstrates that Bowles did not attempt to exhaust his institutional remedies for many of his § 1983 First and Eighth Amendment claims, despite their availability. Turning to the CoreCivic Defendants' motion for summary judgment on this issue, the CoreCivic Defendants assert that Bowles did not properly exhaust his administrative remedies on his Eighth Amendment retaliation

---

[5] For reference, the CoreCivic Defendants, Brun, and the Magistrate Judge all thoroughly discuss the details of the grievance procedure at issue. (<u>See</u> Doc. No. 205 at 4–5; Doc. Nos. 248 at 5–6; Doc. No. 254 at 21–23).

and excessive force claims against Matthews, Mitchell, and Smith from February 2022; his deliberate indifference to serious medical needs claims against CoreCivic and Rowe from April 2022; and his Eighth Amendment excessive force claim against Huddleston from July 2022. (Doc. No. 205 at 6). In arguing for summary judgment on Bowles's failure to exhaust this subset of his First and Eighth Amendment claims against Matthews, Mitchell, Smith, CoreCivic, and Rowe, the CoreCivic Defendants pointed to Wilkes's sworn assertions that: "Bowles did not complain . . . [in] any [] grievance that any individuals at CoreCivic used excessive force against him during his February 2022 transfer to [WCFA]" or "transferred him . . . for retaliation for filing this lawsuit" (Doc. No. 216 ¶¶ 10–11); "Bowles did not complain . . . [in] any [] grievance that any individuals at CoreCivic failed to timely provide him with mental health treatment in April 2022 (id. ¶ 12); and "Bowles did not complain . . . [in] any [] grievance that any individuals at CoreCivic used excessive force against him in July 2022" (id. ¶ 13). Bowles's response states that he did file grievances about all of these events. (Doc. No. 221 ¶¶ 2, 4, 5). However, Bowles provides no evidence in support of those arguments. (See id.). Giving Bowles every benefit, the Court independently reviewed, and could not find, any evidence in the record indicating Bowles indeed filed those grievances in the three-step grievance procedure. (See Doc. No. 247-2; Doc. No. 247-3 ¶ 15, Exs. C, D (not demonstrating grievances pertaining to the alleged conduct at issue)). Considering this, Bowles's argument that he attempted to exhaust his administrative procedures on some of his claims against Matthews, Mitchell, Smith, CoreCivic, Rowe, and Huddleston is not well taken.

The Court turns to Brun's motion for summary judgment. Brun argues that he is entitled to summary judgment on all of Bowles's First and Eighth Amendment claims against him because Bowles did not comply with the TDOC's grievance procedures for any of those claims. (Doc. No.

248 at 7–8). In support, Brun cites to the following evidence: Christian's sworn declaration that "the grievances in [Bowles's] log . . . do not allege that [] Brun failed to protect [Bowles] or was deliberately indifferent to serious medical needs" in August 2021 (Doc. No. 247-3 ¶ 14; <u>see id.</u> ¶¶ 16–18); and Wilkes's sworn declarations that Bowles's "grievances do not allege that [] Brun or any other TDOC staff retaliated against [Bowles] or was deliberately indifferent to serious medica[l] needs" in February 2022 (Doc. No. 247-2 ¶ 14; <u>see id.</u> ¶¶ 17–18). Bowles generally argues in response that the record shows unprocessed grievances. (Doc. Nos. 217, 250). However, Bowles again fails to point to evidence demonstrating as much.

Viewing the evidence in the light most favorable to Bowles, the only pieces of evidence that may support Bowles's arguments, in this Court's view, are (1) Bowles's grievance on August 11, 2021 regarding the August 2021 events in question, and (2) Hill's responsive statement that Brun was present for and involved in that incident. (Doc. No. 247-3, Ex. D). However, neither the grievance nor Hill's response describes any complaint raised by Bowles regarding any TTCC or TDOC official other than Hill. (<u>See generally</u> Doc. No. 247-3, Ex. D). Further, there is no evidence in the record remotely tying Brun to any grievances pertaining to the alleged February 2022 transfer events in question. Given this, Bowles's argument that he attempted to exhaust his administrative remedies on his claims against Brun is not successful.

Bowles's failure to provide any evidence that he attempted to exhaust his administrative remedies on his claims against Matthews, Mitchell, Smith, CoreCivic, Row, Huddleston, and Brun is fatal to his second objection. <u>Napier</u>, 636 F.3d at 223 (inmate must make showing that they made some affirmative efforts to use administrative remedies before showing they were unavailable). Given this, Bowles's argument that Defendants prevented him from using the three-level grievance procedure is, predictably, unsuccessful. Upon conducting a *de novo* review, the

25

Court finds that Bowles did not present any record evidence supporting his assertions that the grievance procedure was unavailable to him in his summary judgment briefing. (See Doc. No. 254 at 28). And Bowles again fails to do so here. (See Doc. No. 266 at 2–5 (citing only Doc. No. 244 in support of his argument, where Wilkes denied Bowles's Title VI grievance for failing to allege a grievance "based on race, color, or national origin," as required)). Given the record is devoid of evidence demonstrating that Bowles did not have the TDOC grievance procedure available to him prior to filing suit, Bowles's third argument on this objection fails.

Ultimately, having conducted a *de novo* review, the Court agrees with the Magistrate Judge that there is no genuine dispute of material fact that Bowles was required, and failed to, exhaust his administrative remedies under the PLRA prior to filing many of his First and Eighth Amendment claims against Matthews, Mitchell, Smith, CoreCivic, Rowe, and Brun. (See Doc. No. 254 at 23–29). The Magistrate Judge correctly determined that there is no genuine dispute that Bowles did not exhaust his administrative remedies for a portion of his claims. The Magistrate Judge also properly found no evidence in the record indicating that those administrative remedies were not available to Bowles. Given this, the Magistrate Judge properly concluded that: (1) Matthews, Mitchell, and Smith are entitled to summary judgment on Bowles's First and Eighth Amendment claims based on the February 2022 transfer from TTCC to WCFA; (2) CoreCivic and Rowe are entitled to summary judgment on Bowles's Eighth Amendment deliberate indifference claims against them from April 2022; (3) Huddleston is entitled to summary judgment on Bowles's Eighth Amendment excessive force claim from July 2022; and (4) Brun is entitled to summary judgment on Bowles's Eighth Amendment failure-to-protect and deliberate indifference claims from August 2021; First Amendment retaliation and Eighth Amendment deliberate indifference claims from February 2022. (Doc. No. 254 at 24–29). Accordingly, Bowles's second objection

26

to the Second R&R will be overruled.

C.  <u>Bowles's Third Objection to the Second R&R</u>

Bowles's final objection to the Second R&R is that he is entitled to judgment as a matter of law on his claims. (Doc. No. 266 at 5–14). In asserting this purported objection, Bowles inappropriately recites his prior arguments to the Magistrate Judge that she already considered and rejected. (See Doc. No. 254 at 39–40 (determining Bowles's motion for summary judgment fails, in part, because of lack of evidence supporting his claims)). The CoreCivic Defendants disagree with Bowles that he is entitled to summary judgment, arguing that the Magistrate Judge correctly found that Bowles failed to identify any record evidence supporting his First and Eighth Amendment claims against Hill, Murray, Rowe, and Beaver, and that the Magistrate Judge properly recommends disposal of Bowles's other claims for failure to exhaust his administrative remedies under the PLRA. (Doc. No. 267 at 7–8). Here, the Court again agrees with the Magistrate Judge and the CoreCivic Defendants that the Second R&R properly recommends denial of Bowles's motion for summary judgment.

Applying the pertinent legal standards at issue, see supra, Section III.2, the Court finds Bowles fails to provide any evidence in support of his assertions that he is entitled to summary judgment on his claims. (Doc. No. 218). In fact, upon reviewing *all* of Bowles's filings pertaining to the parties' various cross-motions for summary judgment, as well as the sources he cites to in his objection, Bowles fails to provide any evidence supporting his claims. (See, e.g., Doc. Nos. 12, 94, 112, 215, 217, 218, 233, 236, 241, 244, Doc. Nos. 246–49, 250). Given this, the Court agrees with the Magistrate Judge's determination that summary judgment is not warranted in Bowles's favor, particularly when viewing the record in the light most favorable to Defendants.

27

(Doc. No. 254 at 40).[6]

Even if the Court were to construe the above-cited references as evidence supporting Bowles's claims, there is still sufficient evidence in the record creating genuine disputes of material fact on all of Bowles's claims not disposed of under the PLRA exhaustion requirement such that summary judgment in Bowles's favor would be inappropriate.[7] For instance, as the Magistrate Judge emphasized, the record contains evidence that:

> (1) Hill did not use any force against Bowles in July 2021 (Doc. No. 208 ¶ 8);
>
> (2) Hill used only balance techniques to subdue Bowles in August 2021, and never intended to cause him harm (Doc. No. 208 ¶¶ 11–16);
>
> (3) Hill, Murray, and Rowe did not escort Bowles to the main compound on May 2021, and would not have been involved in the circumstances of his transfer (Doc. No. 208 ¶¶ 3–5; Doc. No. 213 ¶¶ 3–5; Doc. No. 214 ¶¶ 3–5);
>
> (4) Beaver did not use any force beyond what was required to achieve Bowles's compliance in August 2021 (Doc. No. 207, ¶¶ 3, 6);
>
> (5) Beaver did not deny Bowles access to medical care in August 2021, nor would he have disregarded such requests (Doc. No. 207, ¶¶ 7–9); and
>
> (6) Hill did not use force against Bowles in July 2021, and under no circumstances would have in connection with his decision to file a lawsuit (Doc. No. 208, ¶¶ 8, 9).

These various pieces of evidence, viewed in Hill's, Murray's, Rowe's, and Beaver's favor, are sufficient to establish, at minimum, genuine disputes of material fact on Bowles's remaining First and Eighth Amendment claims. Matsushita, 475 U.S. at 587 (the court must view all evidence and inferences in the light most favorable to the nonmovant).

---

[6] Bowles's belated declaration that his objections, as well as other prior filings, are signed under penalty of perjury (Doc. No. 266 at 14) is an inappropriate attempt to introduce new evidence on his claims through objections. If the Court were to consider that new evidence, it would improperly allow Bowles to re-brief his summary judgment motion through objections. Murr, 200 F.3d at 902 n.1 (parties cannot raise new arguments or issues on objections not presented to the magistrate).

[7] The Court need not make this determination for the First and Eighth Amendment claims that Bowles did not properly exhaust his administrative remedies for, given the Court has determined that the Second R&R properly recommended summary judgment on those claims. See supra, Section II.2.B.

28

Given the CoreCivic Defendants provide sufficient evidence in the record creating genuine disputes of material fact on Bowles's First and Eighth Amendment claims against Hill, Murray, Rowe, and Beaver, the Magistrate Judge was correct to recommend that Bowles's motion for summary judgment be denied. Miller, 866 F.3d at 389 (6th Cir. 2017) (summary judgment is inappropriate where nonmovant presents probative evidence revealing more than "some metaphysical doubt as to the material facts") (citation and quotations omitted). Accordingly, Bowles's third objection will be overruled.

### 3. Moore's Objections to the Second R&R

The Court turns to Moore's two objections to the Second R&R. (Doc. No. 258). First, Moore argues that the Magistrate Judge erred in recommending that summary judgment be denied on Bowles's Eighth Amendment failure to protect claim against her because Moore did not carry her burden to demonstrate the absence of a genuine dispute of material fact on Bowles's claim. (Id. at 1–2). Second, Moore contends that the Magistrate Judge incorrectly declined to recommend summary judgment on the grounds that Bowles did not suffer more than a *de minimis* physical injury stemming from the events leading to Bowles's Eighth Amendment claim against Moore. (Id. at 2). To the extent that Moore's first objection argues that she is entitled to summary judgment because there is no evidence to support the objective component of Bowles's claim against her, that argument was not raised before the Magistrate Judge and is therefore waived (see Doc. No. 205 at 15 (challenging Bowles's claim only as to the subjective component)). Murr, 200 F.3d at 902 n.1. Otherwise, both of Moore's objections are properly before the Court for consideration for *de novo* review, considering the summary judgment standard previously discussed. Fed. R. Civ. P. 72(b)(3); see supra, Section II.2.

### A. Moore's First Objection to the Second R&R

The Court first turns to Moore's objection that the Magistrate Judge incorrectly concluded

29

that she failed to carry her burden of establishing she was entitled to summary judgment on Bowles's Eighth Amendment claim against her. (Doc. No. 258 at 1–2). Bowles brings an Eighth Amendment failure to protect claim against Moore, based on allegations that her and other individuals failed to protect Bowles from threats by gang members when he was transferred to the main compound at TTCC in May 2021. (Doc. No. 16). Under the Eighth Amendment, Bowles has "the right to be free from cruel and unusual punishment." Westmoreland v. Butler Cnty., Kentucky, 29 F.4th 721, 726 (6th Cir. 2022) (citing U.S. Const. amend. VIII). The Supreme Court has established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. "A prison official violates an inmate's rights only if the official is 'deliberate[ly] indifferen[t] to inmate health or safety.'" Westmoreland, 29 F.4th at 726 (quoting Farmer, 511 U.S. at 834)).

This claim under the Eighth Amendment "has an objective and subjective component." Westmoreland, 29 F.4th at 726 (citing Richmond v. Hug, 885 F.3d 928, 937–38 (6th Cir. 2018)). On the objective component, "[f]or a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. The subjective component requires Bowles to show "that the individual defendants (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) consciously disregarded the risk." Westmoreland, 29 F.4th at 726–27 (citations and quotations omitted).

The CoreCivic Defendants move for summary judgment on this claim, asserting that there is no evidence in the record demonstrating the subjective component of Bowles's claim against

Murray, Hill, Rowe, and Moore. (Doc. No. 205 at 12). In support, the CoreCivic Defendants argue in one paragraph:

> Bowles cannot establish that Defendants were deliberately indifferent to ensuring his reasonable safety and security during his incarcerations at Trousdale and Whiteville. Hill, Moore, Murray, and Rowe did not ignore Bowles' alleged requests for protection and were not aware of any threats to his safety with respect to his transfer to the main compound at Trousdale. (Hill Dec. ¶¶ 5–6; Murray Dec. ¶ 5-6; Rowe Dec. ¶ 5-6). Rather, the evidence establishes that these Defendants either would have or attempted to provided Bowles with reasonable safety during and after his transfer. (Hill Dec. ¶ 7; Murray Dec. ¶ 9; Rowe Dec. ¶ 7). Summary judgment is therefore warranted on Bowles' Eighth Amendment failure to protect claims against these individuals.

(Doc. No. 205 at 15). Based on this argument, The Magistrate Judge determined summary judgment in Moore's favor would not be appropriate, reasoning:

> Moore, however, has not submitted a summary judgment declaration, and the CoreCivic Defendants have not identified any record evidence showing Moore's subjective knowledge of the alleged danger to Bowles on the TTCC main compound. The Court cannot infer Moore's subjective perception of any threat to Bowles from the other defendants' declarations. Accordingly, because there is no record evidence to show that Moore did not subjectively perceive any threat to Bowles on the TTCC main compound—and because the CoreCivic Defendants' only other argument in support of summary judgment on this claim fails as a matter of law—Moore has not carried her initial burden to show that she is entitled to summary judgment on Bowles's Eighth Amendment failure-to-protect claim against her.

(Doc. No. 254 at 34–35). Now, Moore challenges this determination, arguing "the evidence in the record does not contain any facts suggesting that Moore subjectively knew that [Bowles] was at risk of harm from other inmates." (Doc. No. 258 at 7). In support, Moore points to the declarations of the other CoreCivic Defendants (Doc. Nos. 208, 213, 214), and asserts that from those the Court can "draw the inference that Moore was not subjectively aware of a substantial risk of harm from the fact that Bowles lumps Moore in with a number of other Defendants who have provided unrebutted evidence that they were not aware of any danger to Bowles." (Doc. No. 258 at 7). In response, Bowles recites the bases for his claim against Moore and contends that she did violate

31

his Eighth Amendment rights. (Doc. No. 268 at 3–4, 7–9).

The Court is not convinced by Moore's arguments. Instead, the Court agrees with the Magistrate Judge that Moore failed to carry her burden of establishing there was no genuine dispute of fact as to the subjective component of Bowles's claim. True, the evidence the CoreCivic Defendants cite to in order to demonstrate the lack of subjective component shows that Hill, Murray, and Rowe were not aware of threats to Bowles's safety, and would have or attempted to provide him safety during his transfer. (Doc. No. 208 ¶¶ 5–7; Doc. No. 213 ¶¶ 5–6, 9; Doc. No. 214 ¶¶ 5–7). However, the CoreCivic Defendants' briefing is void of any evidence speaking to Moore's subjective mental state during the events in question. (See Doc. No. 205 at 15). While such evidence is not always necessary, in that a movant's initial burden "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989), Moore did not make this argument. Instead, she erroneously argued that the evidence affirmatively demonstrates that her, Hill, Murray, and Rowe were not aware of threats to Bowles's safety and tried, or would have tried, to prevent risk. (Doc. No. 205 at 15). And, to the extent that Moore contends the Court can draw inferences in her favor based on Hill's, Murray's, and Rowe's declarations, it would be legal error for the Court to do so. Matsushita, 475 U.S. at 587 (courts must draw all inferences in the nonmovant's favor).

Given this, the Court agrees with the Magistrate Judge that Moore has failed to carry her burden of establishing there is no genuine dispute of material fact on an element of Bowles's Eighth Amendment claim against her. Moore's belated attempts to bolster her summary judgment briefing with arguments not raised in the first instance will not be considered, and so do not change

32

the Magistrate Judge's determination.[8] (See Doc. No. 258 at 6 (arguing for the first time that the record demonstrates that there was no "objectively serious risk to Bowles"), 7 (arguing for the first time that "the evidence in the record does not contain facts suggesting that Moore subjectively knew that [Bowles] was at risk of harm"). Accordingly, Moore's first objection will be overruled.

## B. Moore's Second Objection to the Second R&R

Moore's second objection, that the Magistrate Judge erred in denying summary judgment on the grounds that the record shows there is no dispute of material fact that Bowles did not suffer more than a *de minimis* physical injury, fares no better. (Doc. No. 258 at 2). The Second R&R recommends that the Court reject the CoreCivic Defendants' argument that they are entitled to summary judgment on all of Bowles's Eighth Amendment claims because Bowles did not suffer more than a *de minimis* injury. The Magistrate Judge explains that Moore (and the other CoreCivic Defendants) failed to properly consider the Sixth Circuit precedent in Small v. Brock, 963 F.3d 539, 543–44 (6th Cir. 2020). In Small, the Sixth Circuit explained that § 1997e(e) of the PLRA does not completely bar an inmate like Bowles from recovering on his Eighth Amendment claims even with a *de minimis* physical injury. (Doc. No. 254 at 35 n.9). Moore contends this conclusion is incorrect, given: (1) it is a "misinterpretation of applicable law"; (2) is contrary to this Court's precedent; and (3) the Magistrate Judge's supporting authority is not on point.[9] (Doc. No. 258 at

---

[8] Moore has filed a "Renewed Motion for Summary Judgment," (Doc. No. 260), as well as new evidence in support (Doc. No. 262). Moore should have sought leave of Court prior to making these filings. See Bruce v. Levy Premium Foodservices Ltd. P'ship of Tennessee, 2022 WL 18716517, at *1 (M.D. Tenn. Feb. 28, 2022) ("no federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment; rather, a successive Rule 56 motion may be filed only with the district court's authorization") (citation and quotations omitted). Given this, the Court will direct the Clerk to administratively terminate Moore's motion (Doc. No. 260) without prejudice.

[9] In support of her objection, Moore contends that the Magistrate Judge's reliance on King v. Zamiara, 788 F.3d 207 (6th Cir. 2015) is flawed, given "Bowles does not allege that he suffered a constitutional injury distinct from the mental and emotional injuries he claims to have suffered."

33

8–10). Bowles again disagrees with Moore's objection, stating that he has shown more than a *de minimis* injury and that the Magistrate Judge was correct in invoking <u>Small</u> here. (Doc. No. 268 at 5–6, 11). The Court considers Moore's objection and arguments in support thereof through a *de novo* review of this issue in turn.

Section 1997e(e) of the PLRA "bars prisoners from filing actions 'for mental or emotional injury suffered while in custody without a prior showing of physical injury." <u>Small</u>, 963 F.3d at 543. According to Sixth Circuit precedent, a "*de minimis* [physical] injury" does not constitute a "physical injury" for mental and emotional injuries. <u>Flanory v. Bonn</u>, 604 F.3d 249, 254 (6th Cir. 2010) (noting a "physical injury" "must be more than *de minimis* for an Eighth Amendment claim to go forward" under § 1983). However, the Sixth Circuit has held that the requirement that a plaintiff suffer more than a *de minimis* injury under § 1997e(e) for mental and emotional injuries applies only to requested compensatory relief for those injuries. <u>Small</u>, 963 F.3d at 543 (finding plaintiff that failed to show physical injury could still "pursue his action based on the requests for non-compensatory relief," and noted there was a "strong argument" that plaintiff could pursue compensatory damages for his constitutional injury). In the years following <u>Small</u>, various Sixth Circuit decisions have applied <u>Small</u>, holding that the PLRA does not entirely bar relief for mental and emotional injuries with only *de minimis* physical injuries. See <u>Wallace v. Coffee Cnty., Tennessee</u>, 852 F. App'x 871, 879 (6th Cir. 2021) ("The <u>Small</u> court did decide, however, that, at the very least, the PLRA did not bar Small's suit insofar as it sought forms of relief other than compensatory damages.") (citation and quotations omitted); <u>Westley v. Harris</u>, 2024 WL 4111143, at *3 (6th Cir. Sept. 4, 2024) ("Because Westley sought punitive damages for mental and emotional

---

(Doc. No. 258 at 10). Given Moore's objection fails for the reasons discussed, and the applicability of <u>King</u> to the instant case does not change this Court's opinion, the Court will not consider this argument further.

injury, his failure to allege physical injury is not fatal to his claim."); <u>Turner v. Long</u>, 2024 WL 3029249, at *3 (6th Cir. June 17, 2024) ("Although the PLRA bars prisoners from seeking compensatory damages for 'emotional' injuries, it does not bar them from seeking nominal or punitive damages for those injuries.").

The CoreCivic Defendants argue they are entitled to summary judgment on Bowles's Eighth Amendment claims against them because Bowles cannot point to evidence showing he suffered more than a *de minimis* physical injury from any of the incidents underlying those claims. (Doc. No. 205 at 20–21). In support, the CoreCivic Defendants point to various Sixth Circuit and district court cases holding that a physical injury is needed for recovery under the PLRA, and that Bowles's alleged injuries are *de minimis*. (<u>Id.</u> at 20). Moore is correct in her summary judgment briefing that there is no evidence in the record demonstrating Bowles suffered more than a *de minimis* injury from any of the events in question, let alone from the events leading to his Eighth Amendment claim against her. (Doc. Nos. 13, 16). However, despite Moore's instance to the contrary, this does not end the Court's inquiry.

The CoreCivic Defendants argue they are entitled to summary judgment on *all* of Bowles's Eighth Amendment claims as a matter of law because Bowles does not allege and demonstrate more than a *de minimis* physical injury on any of his Eighth Amendment claims. (Doc. No. 205 at 20–21). As the Magistrate Judge alluded to (Doc. No. 254 at 35 n.9), this expansive argument is legally incorrect. Sixth Circuit precedent is clear that Bowles's failure to provide evidence supporting a non-*de minimis* injury is not fatal to all recovery on his Eighth Amendment claims. Rather, regardless of the scope of the injury Bowles alleges and can offer evidence supporting, Bowles may still pursue his Eighth Amendment claims against the CoreCivic Defendants to the extent he seeks punitive and nominal damages (<u>see</u> Doc. No. 254 at 35 n.9; <u>see also</u> Doc. No. 16

(seeking $22 million in damages for, among other things, "hardship," "hate-crime[s]," "harassment, threats," "PTSD, mental anguish, [and] emotional distress")).  <u>Westley</u>, 2024 WL 4111143, at *3; <u>Turner</u>, 2024 WL 3029249, at *3.

None of the cases Moore cites to in her objection change this Court's view.  (<u>See</u> Doc. No. 258 at 9).  First, Moore cites to various decisions in this District dismissing prisoners' Eighth Amendment claims because the prisoners failed to establish a physical injury.  (<u>Id.</u>).  However, each cited authority supports the Court's conclusion that <u>Small</u> dictates only that a prison cannot recover compensatory damages for mental and emotional injuries without a non-*de minimis* physical injury.  <u>See, e.g.</u>, <u>Ettienne v. Peralta</u>, 2023 WL 5944149, at *2–3 (dismissing prisoner's Eighth Amendment failure to protect claim based on emotional injuries where prison sought only "monetary damages"); <u>Perry v. Tennessee</u>, 2023 WL 2601928, at *12 (M.D. Tenn. Mar. 22, 2023), <u>report and recommendation adopted</u>, 2023 WL 2938226 (M.D. Tenn. Apr. 13, 2023) (finding prisoner that sought damages for his emotional injuries from an Eighth Amendment violation was barred from recovery under the PLRA because his injuries were *de minimis*); <u>Littlejohn v. Core Civic</u>, 2022 WL 1124855, at *2, 4 (M.D. Tenn. Apr. 14, 2022) (prisoner barred from recovery for Eighth Amendment violation alleging emotional and mental injuries and seeking only compensatory damages); <u>Proper v. Rutherford Cnty. Sheriff's Office</u>, 2022 WL 906404, at *3 (M.D. Tenn. Mar. 28, 2022) (noting that prisoner bringing Eighth Amendment claim based on mental anguish could not recover compensation because he did not allege a prior physical injury); <u>Jefferson v. Core Civic</u>, 2021 WL 5140847, at *2, 4–5 (M.D. Tenn. Nov. 4, 2021) (prisoner seeking damages to compensate him for mental and emotional injuries from an alleged Eighth Amendment violation was barred from recovery absent pleading a physical injury, and claim for injunctive relief was not sufficiently supported).  These cases do not disturb this Court's

36

determination that <u>Small</u> does not bar Bowles from recovering, at minimum, punitive or nominal damages for his alleged mental and emotional injuries. See <u>Small</u>, 963 F.3d at 543; <u>Turner</u>, 2024 WL 3029249, at *3.

Although Moore is correct that Bowles cannot point to any evidence showing more than a *de minimis* physical injury relating to his Eighth Amendment claim against her, the CoreCivic Defendants' summary judgment briefing fails to fully explain the import of this considering relevant Sixth Circuit precedent. (Doc. No. 205 at 20-21). In her objection, Moore continues to make the same mistake by failing to appreciate <u>Small</u> and its progeny. (Doc. No. 258 at 8–11). Given this repeated misunderstanding of the limitations of the physical injury requirement of the PLRA, the CoreCivic Defendants' basis for moving for summary judgment based on this ground is too broad to warrant judgment in Moore's favor on Bowles's Eighth Amendment claim against her. See <u>Rodgers</u>, 344 F.3d at 595 (the movant must identify the grounds for summary judgment). Accordingly, Moore's second objection will be overruled.

## IV.    CONCLUSION

Having conducted the *de novo* review required by Rule 72 of the Federal Rules of Civil Procedure, Bowles's objections (Doc. No. 265, 266) and Moore's objections (Doc. No. 257) will be overruled. The Court will approve and adopt the R&Rs (Doc. Nos. 253, 254) in full. Accordingly, Bowles's claims against Jackson and Harris will be dismissed without prejudice; Bowles's motion to quash (Doc. No. 222) will be denied; Bowles's motion to deny Defendants' motions to strike (Doc. No. 242) will be construed as a response in opposition to those motions; the CoreCivic Defendants' and Brun's motions to strike Bowles's statement of undisputed material facts (Doc. Nos. 235, 239) will be denied; Bowles's motion to strike Brun's statement of undisputed material facts (Doc. No. 249) will be denied; the CoreCivic Defendants' motion for summary judgment (Doc. No. 204) will be denied in part as to Bowles's Eighth Amendment failure

37

to protect claim against Moore, and will be granted with respect to Bowles's remaining claims against CoreCivic, Beaver, Hill, Huddleston, Matthews, Mitchell, Murray, Rowe, and Smith; Brun's motion for summary judgment (Doc. No. 246) will be granted; and Bowles's motion for summary judgment (Doc. No. 217) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE